[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13177

_____

D.C. Docket No. 1:14-cr-20056-JAL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GLEN STERLING CARPENTER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 7, 2015)

Before MARCUS, WILLIAM PRYOR, and JILL PRYOR, Circuit Judges.

MARCUS, Circuit Judge:

Glen Sterling Carpenter appeals his sentence of 97 months of incarceration

and lifetime supervised release.  In 2013, federal law enforcement authorities

detected an account sharing child pornography over the Internet, which they traced

to Carpenter.  When they searched his laptop, they discovered 64 videos of child

pornography -- many depicting minors under the age of 12, and some depicting sadistic and masochistic conduct. Carpenter subsequently admitted that he had been downloading child pornography for about a year. He was charged by indictment with one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2), and eventually pled guilty. On appeal, Carpenter argues that his sentence of 97 months in prison is procedurally and substantively unreasonable. He also claims that his sentence of supervised release for life is unreasonable, and that two of the special conditions of his release -- barring him from possessing a computer or another device that can access the Internet, and from possessing sexually explicit material involving adults -- are unreasonable as well.

We disagree, and uphold his sentence in its entirety. As for Carpenter's prison sentence, the district court accurately calculated the Sentencing Guidelines range, treated the Guidelines as advisory, provided a thorough explanation of how it weighed the 18 U.S.C. § 3553(a) factors, and addressed Carpenter's motion for a downward variance at considerable length. The district court's approach was procedurally reasonable, and yielded a substantively reasonable result, in light of the severity of Carpenter's conduct. As for his sentence of supervised release, Carpenter invited the district court to impose a life term, and cannot now complain that the court did as he asked. Finally, he failed to make a specific and

2

contemporaneous objection to the two special conditions of his supervised release, and he cannot show that the court plainly erred in imposing those conditions.  We affirm.

I.

The basic facts and procedural history are these.  On September 16, 2013, federal law enforcement authorities detected a user on the Ares peer-to-peer network by the name of "gcarp@ares," who was advertising child pornography for download.  Law enforcement downloaded a video containing child pornography from the user, and identified the IP address associated with that user name as belonging to Carpenter at his known residence.  On January 14, 2014, law enforcement executed a search warrant at Carpenter's home.  They did not find a computer, but did discover a receipt indicating that Carpenter had sold a Lenovo laptop to a local pawnshop.  That same day, the agents went to the pawnshop and recovered the laptop.

A forensic search of Carpenter's laptop revealed that it contained a vast collection of child pornography.  Specifically, the laptop contained 64 videos depicting minors engaged in sexually explicit conduct, or 4,800 discrete images.[1] Many of the videos depicted prepubescent minors under the age of 12; some even depicted toddlers.  Three videos depicted "sadistic and masochistic" conduct.

---

[1] One video is considered to contain 75 images.  See U.S.S.G. § 2G2.2 n.4(B)(ii).

Nineteen of the videos ranged from 10 to 44 minutes in length.  The record contains specific details of several of the videos:

1. A video depicting an adult male engaging in vaginal intercourse with a minor female who is kneeling face down on a bed.

2. A video depicting different images of adult males vaginally penetrating female toddlers.  One female toddler is tied at the ankles and around the back of her neck as she is bent over a bed.

3. A video depicting an adult male engaged in vaginal and anal intercourse with a female under the age of 18.

4. A video depicting an adult male performing oral sex on a female under 18 and penetrating the female's anus with his finger.

The laptop also contained 45 videos depicting adult pornography, as well as 2 videos where the ages of the subjects could not be determined.

Carpenter waived his Miranda rights, and subsequently confessed to downloading and possessing child pornography on his laptop.  Specifically, he admitted to downloading child pornography for about a year, and explained that he used search terms such as "kiddy porn" to locate the videos.  He also said that he attempted to masturbate while viewing the videos, but was unable to do so, that he felt bad for the children depicted in the videos, that he had an attraction to children, and that he needed help with his problem of viewing child pornography.

On January 30, 2014, Carpenter was charged by a federal grand jury sitting in the Southern District of Florida with one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2).  He eventually

4

pled guilty to the charged offense without a plea agreement in a change of plea hearing on March 11.  At the hearing, the district court conducted a plea colloquy in which Carpenter confirmed that he understood the rights he was waiving by pleading guilty and the penalties he faced.  In particular, Carpenter understood that he was subject to a term of up to 20 years of imprisonment, as well as a term of supervised release ranging from 5 years to life.  Carpenter acknowledged that the court would consider all the sentencing factors provided by law, including the Guidelines, and that the court would impose a sentence it deemed appropriate.  The prosecutor also made a factual proffer at the hearing, to which Carpenter assented. The court, finding that Carpenter was competent to plead, that his guilty plea was knowing and voluntary, and that it was supported by an adequate factual basis, accepted his plea and adjudged him guilty as charged.

The presentence investigation report ("PSI") calculated Carpenter's Guidelines range this way.  His base offense level was 18.  U.S.S.G. § 2G2.2(a)(1). He received a 2-level enhancement because the offense involved material depicting a minor below the age of 12, id. § 2G2.2(b)(2); 2 levels because the offense involved distribution, id. § 2G2.2(b)(3)(F); 4 levels because the offense involved material depicting sadistic or masochistic conduct, id. § 2G2.2(b)(4); 2 levels because the offense involved the use of a computer, id. § 2G2.2(b)(6); and 5 levels because the offense involved 600 or more images, id. § 2G2.2(b)(7)(D).  He

received a 3-level reduction for acceptance of responsibility. Carpenter's total offense level was 30, so with a criminal history category of I, his Guidelines range was 97 to 121 months of imprisonment. The maximum statutory penalty was 20 years, followed by a term of supervised release from 5 years to life. 18 U.S.C. §§ 2252(b)(2), 3583(k); U.S.S.G. § 5D1.2(b)(2). The PSI also noted that a factor potentially meriting an upward departure, pursuant to U.S.S.G. § 2G2.2 n.4(B)(ii), was that Carpenter possessed a visual depiction over 5 minutes, since 19 of the videos on Carpenter's laptop ranged from 10 to 44 minutes in duration.

The PSI revealed several details about Carpenter's life and personal characteristics. Carpenter was born in 1955, rendering him 58 at the time of sentencing. According to Carpenter, his mother was an alcoholic, and married a man who was physically abusive toward Carpenter, his mother, and his siblings. He denied experiencing any sexual or psychological abuse. He admitted a history of substance abuse, namely heroin. The PSI also recommended a number of conditions of supervised release, including the two conditions Carpenter challenges in this case:

1. Computer Possession Restriction: The defendant shall not possess or use any computer; except that the defendant may, with the prior approval of the Court, use a computer in connection with authorized employment.

2. Restricted from Possession of Sexual Materials: The defendant shall not buy, sell, exchange, possess, trade, or produce visual depictions of minors or adults engaged in sexually explicit

6

conduct. The defendant shall not correspond or communicate in person, by mail, telephone, or computer, with individuals or companies offering to buy, sell, trade, exchange, or produce visual depictions of minors or adults engaged in sexually explicit conduct.

Carpenter made no objection to the PSI, nor to any of the listed conditions.

Carpenter did, however, request a downward variance in a sentencing memorandum. Specifically, he asked for a sentence of 56 months, and argued that a December 2012 report by the United States Sentencing Commission ("the Report") had determined that the Sentencing Guidelines for child pornography cases, found in U.S.S.G. § 2G2.2, were flawed. Carpenter argued, citing the Report, that the § 2G2.2 enhancements are outdated because they apply in nearly every case, and yield Guidelines sentences higher than in cases involving sexual contact with minors. He noted that, in response, courts have typically varied downward, and imposed Guidelines-range sentences in only 27.3 percent of cases. Carpenter also cited several cases in the United States District Court for the Southern District of Florida where defendants had received downward variances despite allegedly engaging in more serious conduct than himself. He closed by arguing that a 56 month sentence would adequately take into account his individual characteristics, as well as the flaws in the Sentencing Guidelines.

At the sentencing hearing, held on July 7, 2014, the district court took argument on Carpenter's motion for a downward variance and, ultimately, the

appropriate sentence.  Defense counsel argued that, in the Sentencing

Commission's "own words," the Guidelines were "outdated and produce[d]

disproportionate sentencings."  Counsel reiterated that courts have tended to

downwardly vary.  Counsel also presented several mitigating factors: Carpenter's

abuse at the hands of his stepfather, his history of substance abuse, the fact that he

did not have "a long history" of downloading child pornography, and the fact that

his offense conduct began at the time of an alleged relapse.  Counsel requested a

sentence of 56 months, "as well as lifetime supervised release," which would mean

that Carpenter would "always have the resources that Probation has to offer in

terms of counseling and therapy, which has not been the case with his drug

addiction."  Before finishing her presentation, counsel again argued that "a

sentence of 56 months would sufficiently serve the purposes of

punishment . . . [and] would safeguard the public by placing [Carpenter] on

supervised release for life."  Carpenter himself then stated that it was his "wish that

the BOP place [him] in a facility where [he] [could] get that help that [he]

desperately need[ed]."

The prosecutor then responded to defense counsel's arguments.

Specifically, he argued that the "whole concept of empirical studies" is not "very

valid," and "serve[d] as a distraction."  He referred to our decision in United States

v. Cubero, in which we held that the Report "[did] not change the statutory

8

sentencing scheme, the applicable sentencing guidelines, or the binding precedent about § 2G2.2 in this Circuit."  754 F.3d 888, 900 (11th Cir.), cert. denied, 135 S. Ct. 764 (2014).  The prosecutor also observed that a number of the § 2G2.2 enhancements did not apply in Carpenter's case, contrary to Carpenter's claim that the enhancements typically apply across the board.  While he opposed Carpenter's request for a downward variance, he agreed that "Mr. Carpenter's background and his seemingly genuine desire to get help" were "compelling arguments for leniency," and recommended a sentence at the low end of the Guidelines range.

The district court then pronounced the sentence.  It began by acknowledging that it was obliged to "consult the guidelines, take them into account, but [was] not bound by them," and that it had to look to the "factors under [§ 3553(a)] to determine whether they support the requested sentence."  The court first considered "the nature and circumstances of the offense and the history and characteristics of [Carpenter]."  It observed that the 64 videos possessed by Carpenter generated 4,800 distinct images -- eight times the 600 images necessary to qualify for the maximum enhancement under U.S.S.G. § 2G2.2(b)(7) -- and that three of those videos "depicted minors engaged in sadistic and masochistic conduct."  The court also referred to the mitigating evidence presented by Carpenter: that Carpenter "ha[d] one prior criminal history point; ha[d] a drug problem; and . . . was subjected to physical abuse by his stepfather."  The court

9

then acknowledged "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, provide just punishment . . . , [and] afford adequate deterrence[,] . . . the need to protect the public from further crimes of the Defendant, . . . [and] the need to avoid unwarranted sentencing disparities."

In light of the seriousness of Carpenter's offense, the trial court determined that a sentence of 56 months would not meet "the requirements of [§] 3553(a)." While the court agreed that it could consider the criticisms of the Guidelines advanced in the Sentencing Commission's Report, it determined that it was not bound by them, and denied Carpenter's request for a downward variance. Instead, it imposed a 97 month sentence "at the lowest end of the advisory guideline range." It also imposed a life term of supervised release upon Carpenter's release from incarceration. That sentence included the two conditions recommended by the PSI, prohibiting Carpenter from possessing a computer, except in connection with employment with prior court approval, or adult pornography. It also stipulated that "[t]he computer restrictions . . . shall also apply to any smartphone or any other access device." The court then asked if either party had any objections, and defense counsel replied: "In order to preserve Mr. Carpenter's appellate rights, I would object to the substantive and procedural reasonableness of the sentence." The court's judgment was entered on July 10, 2014.

This timely appeal followed.

II.

Carpenter first argues that his sentence of 97 months of imprisonment is unreasonable, an objection he preserved before the district court. On appeal, he bears the burden to show that his sentence is unreasonable. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010). We assess the reasonableness of a sentence in two steps. First, we ask whether the sentencing court "committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Cubero, 754 F.3d at 892. Second, "we examine whether the sentence is substantively unreasonable under the totality of the circumstances and in light of the § 3553(a) factors." Id. On this record, we conclude that Carpenter's prison sentence is both procedurally and substantively reasonable.

A.

We begin by considering whether the district court committed any procedural error in fashioning or explaining Carpenter's sentence. The answer is no. When pronouncing a defendant's sentence, the court need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."

11

Rita v. United States, 551 U.S. 338, 356 (2007).  In particular, "[a] sentencing court is not required to incant the specific language used in the guidelines or articulate its consideration of each individual § 3553(a) factor, so long as the record reflects the court's consideration of many of those factors."  United States v. Ghertler, 605 F.3d 1256, 1262 (11th Cir. 2010) (citation and internal quotation marks omitted).  Nor must the court respond in detail to every argument presented by the defendant; after all, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances."  Rita, 551 U.S. at 356.  "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments."  Id. at 357.

As we see it, the district court's explanation of its sentence was beyond sufficient.  Indeed, it spanned over seven pages of transcript.  The court expressly acknowledged that the Guidelines are merely advisory, and that it had to look to the "factors under [§ 3553(a)] to determine whether they support the requested sentence."  The court then provided a thorough account of how it applied the § 3553(a) factors.  First, the court considered "the nature and circumstances of the offense and the history and characteristics of [Carpenter]."  See 18 U.S.C. § 3553(a)(1).  It observed that Carpenter possessed at least one video depicting the rape of female toddlers, one of whom "was tied at the ankles and neck"; that many

12

of the videos ranged from 10 to 44 minutes in length; that he possessed 4,800 images, or eight times the 600 images needed to qualify for a 5-level enhancement under § 2G2.2(b)(7) of the Guidelines; that he had been downloading child pornography for a year; and that three of the videos "depicted minors engaged in sadistic and masochistic conduct." Yet the court also acknowledged, as mitigation, that Carpenter had been "physically abused" and had a drug problem. In light of the severity of Carpenter's offense, and "[i]n order to promote respect for the law, to provide just punishment and certainly to afford adequate deterrence," see id. § 3553(a)(2), the court concluded that 97 months, "a sentence at the lowest end of the advisory guideline range," would be appropriate.

Carpenter argues, however, that the district court failed to consider a number of factors: his personal history and characteristics, the need for educational training and medical treatment, and the importance of avoiding unwarranted sentencing disparities. We are unpersuaded on all fronts. For starters, the district court was not even required to "articulate its consideration of each individual § 3553(a) factor." Ghertler, 605 F.3d at 1262 (citation and internal quotation marks omitted). Yet it did, and at some length. Indeed, the court referenced Carpenter's personal characteristics, including his drug problem and the fact that he was a victim of physical abuse, in fashioning his ultimate sentence. The court likewise gave due consideration to these factors in sentencing Carpenter to lifetime supervised release

13

with a requirement that he "participate in an approved inpatient or outpatient mental health treatment program." Finally, the court expressly acknowledged "the need to avoid unwarranted sentencing disparities," and concluded that the severity of Carpenter's offense provided ample support for the sentence it was imposing. We discern no procedural error in the court's application of the § 3553(a) factors.

Nor are we convinced that the district court treated the Guidelines as presumptively reasonable. The Supreme Court held in Nelson v. United States that district courts may not apply a "presumption of reasonableness" to the Guidelines range. 555 U.S. 350, 352 (2009) (per curiam). However, nothing in the record before us indicates that the district court applied such a presumption. Unlike in Nelson, the court in this case did not state that "the Guidelines are considered presumptively reasonable." Id. at 350-51. To the contrary, the court expressly noted that the Guidelines are advisory, and conducted a thorough analysis of the § 3553(a) factors. Carpenter directs our attention to a single statement made by the court while questioning defense counsel that the Sentencing Commission's Report had "been there since 2012. It's now 2014." This isolated and out-of-context statement, in which the court was simply presenting a response to counsel's argument, is far too slender a reed to suggest that the court treated the Guidelines as presumptively reasonable. To the contrary, the record reflects that the court

carefully and thoughtfully grappled with Carpenter's argument against a Guidelines sentence, and ultimately rejected it.

Finally, Carpenter argues that he presented a nonfrivolous argument for a downward variance, based on the Sentencing Commission's Report, and was entitled to a more extensive explanation than the district court gave for rejecting it. The court, however, explained why it rejected Carpenter's request in considerable detail. The court cited our decision in Cubero, in which we held that the Report "does not render the non-production child pornography Guidelines in § 2G2.2 invalid or illegitimate." 754 F.3d at 900. Applying Cubero, the court correctly reasoned that "while a district court may certainly consider [the Report], in choosing the ultimate sentence, the [R]eport does not invalidate [§] 2G2.2." In the end, however, the court concluded that in light of the severity of Carpenter's crime, a sentence of 56 months would not "meet[] the requirements of [§] 3553(a)." If any doubt remained as to whether the court's explanation was adequate, we also said in Cubero that the Report "does not heighten the district court's statutory duty to state the reasons for imposing a particular sentence." 753 F.3d at 901. The district court was not obliged to give any more explanation than it did. Thus, we discern no procedural error in the court's sentence, its explanation thereof, or its decision not to vary.

15

B.

Carpenter's 97-month sentence is also substantively reasonable. We review "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 51 (2007). Abuse-of-discretion review "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citation and internal quotation marks omitted). This deferential standard "appreciate[s] the institutional advantage that district courts have in applying and weighing the [§] 3553(a) factors in individual cases." United States v. Pugh, 515 F.3d 1179, 1190-91 (11th Cir. 2008). Of course, the district court's discretion is not "unbridled," for "looking at sentencing decisions through the prism of discretion is not the same thing as turning a blind eye to unreasonable ones." United States v. McQueen, 727 F.3d 1144, 1156 (11th Cir. 2013) (citation and internal quotation marks omitted and alteration adopted).

In particular, "[a] district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." Irey, 612 F.3d at 1189 (citation and internal quotation marks omitted). However, "this Court will not substitute its judgment in weighing the relevant factors." United States v. Dougherty, 754 F.3d

16

1353, 1361 (11th Cir. 2014), cert. denied, 135 S. Ct. 1186 (2015).  Ultimately, we may only vacate a defendant's sentence "if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. McBride, 511 F.3d 1293, 1297-98 (11th Cir. 2007) (per curiam) (citation and internal quotation marks omitted).

The district court did not abuse its considerable discretion in sentencing Carpenter to 97 months of imprisonment.  At the outset, we note that Carpenter's sentence is at the very bottom of the advisory Guidelines range of 97 to 121 months, and is less than half of the statutory maximum of 240 months, two factors which indicate reasonableness.  Cubero, 754 F.3d at 898.   And it is lower than the sentences received by other defendants convicted of possession of child pornography.  See, e.g., United States v. Cuellar, No. 14-12369, 2015 WL 3827671, at *1 (11th Cir. June 22, 2015) (upholding a 210 month Guidelines sentence where the district court declined to downwardly vary).  Moreover, we have emphasized the seriousness of child pornography offenses, and the harm they inflict on their victims, time and again.  See, e.g., United States v. Wayerski, 624 F.3d 1342, 1354 (11th Cir. 2010) ("Those who receive and exchange child

17

pornography create a demand that influences the production of the pornography and the attendant physical and emotional injury to children.").

As we see it, the facts of this case fully support the sentence pronounced by the district court. As we've explained, Carpenter possessed 4,800 images, contained in 64 videos, depicting minors involved in sexually explicit conduct -- eight times the number of images required to qualify for the maximum enhancement under the Sentencing Guidelines. U.S.S.G. § 2G2.2(b)(7). Nineteen of the videos found on Carpenter's laptop ranged from 10 to 44 minutes in duration, or two to nine times the five minutes contemplated by the Guidelines, a factor which could well have served as cause for an upward departure. Id. § 2G2.2 n.4(B)(ii). At least three of the videos depicted sadistic and masochistic conduct. To take just one particularly disturbing example, Carpenter possessed a video depicting several instances of adult males sexually assaulting female toddlers, one of whom was tied at the ankles and neck. In light of these undisputed facts, the district court imposed a within-Guidelines sentence calculated to "reflect[] the seriousness of the offense." Yet the district court also weighed Carpenter's mitigation -- his history of physical abuse and his drug problem -- in giving him a sentence at the low end of the Guidelines range. On this record, we cannot say that the district court committed any clear error in judgment.

Nor did the district court abuse its discretion in denying Carpenter's request for a downward variance. Before the district court, Carpenter presented his argument as a challenge to the Guidelines themselves, based on the Sentencing Commission's Report. This argument is a non-starter. As we explained in Cubero, the Report "does not render the non-production child pornography guidelines in § 2G2.2 invalid or illegitimate." 754 F.3d at 900. While the district court in the instant case "was empowered with discretion" to grant a downward variance, it was not obliged to do so. Id. In light of the severity of Carpenter's conduct, we cannot say that it abused that discretion.

On appeal, Carpenter presents a slightly different formulation of his argument, claiming that his position has never been that the Report "invalidated" the § 2G2.2 Guidelines. Instead, he argues that 97 months is too harsh for him, "a first time offender in a mine-run non-production case that never had inappropriate sexual contact with a minor," and that courts in similar cases have granted downward variances. The defendant in Cubero made the same argument. See Cubero, 754 F.3d at 899-900 ("Cubero stresses that the 2013 [R]eport validates his argument at sentencing that the § 2G2.2 guidelines are overly severe for his 'mine-run, first-offender, no-contact case.'"). Carpenter's argument fails for the same reason. The district court could, and did, consider the fact that other courts have granted downward variances, as well as the need to avoid sentencing disparities, in

19

evaluating Carpenter's request.  But it also reasonably concluded that the facts of

Carpenter's case did not merit a downward variance.  Moreover, Carpenter fails to

account for the variety of reasons why district courts may have granted variances

in these other cases, such as the government agreeing to the downward variance or

the offender's Guidelines range being much higher than Carpenter's range.  We

will not substitute our own judgment in weighing these factors for that of the

district court.  Dougherty, 754 F.3d at 1361.  Carpenter's sentence is substantively

reasonable.

## III.

Carpenter also challenges several aspects of the district court's decision to

sentence him to lifetime supervised release.  First, Carpenter objects to the life

term.  Second, he objects to two of the special conditions that the court imposed.

Each of these challenges fails as well.

## A.

Carpenter claims that the court automatically sentenced him to lifetime

supervision without any consideration of the circumstances of his case, and that a

life term was not warranted without some showing that he had abused children.

Carpenter, however, cannot complain about the life term of his supervised release

because he expressly requested that the district court sentence him to a life term,

and thereby invited any error the court may have made in doing so.  It is by now "a

20

cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir. 2005) (citation and internal quotation marks omitted).  The invited error doctrine "stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal." United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009).  Thus, where one party has induced or invited error, we may not invoke the plain error rule to reverse the district court's judgment. Silvestri, 409 F.3d at 1327.  As we see it, Carpenter invited the sentencing court's decision to impose a life term of supervision.

Indeed, this case is strikingly similar to United States v. Love, in which we held that a defendant could not challenge his supervised release on appeal after asking the district court to impose such a sentence.  449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam).  During sentencing, the defendant in Love "repeatedly requested the court impose a sentence of time served followed by a term of supervised release." Id. at 1155.  The court, however, refused to sentence him to time served, and instead sentenced him to 45 days of imprisonment, followed by five years of supervised release. Id. at 1155-56.  On appeal, the defendant argued that the statute under which he was convicted did not authorize supervised release, and alternatively, that the maximum term of supervision he could receive was one year. Id. at 1156.  We did not reach the merits of his claims because we concluded

21

that he had invited error by requesting that the court impose supervised release, and he was, therefore, "precluded" from challenging that decision on appeal. Id. at 1157.

Like the defendant in Love, Carpenter may not challenge his lifetime supervision because he repeatedly asked the court to impose a life term. Thus, during sentencing, defense counsel opined that she thought "a sentence . . . of 56 months . . . , as well as lifetime supervised release" would be appropriate. Indeed, she extolled the virtues of supervised release for life: "[W]hat that would mean for [Carpenter] is that he will always have the resources that Probation has to offer in terms of counseling and therapy, which has not been the case with his drug addiction." Counsel observed that Carpenter had only been able to access treatment in the past by "cobbl[ing] together his own benefits." And counsel also averred that lifetime supervised release "would safeguard the public." The court took these statements into account and "agree[d] that a sentence of supervised release for life is . . . appropriate." On this record, it is clear that Carpenter not only asked for supervised release, but affirmatively argued in favor of a life term given his need for treatment and close supervision. By doing so, he invited any error the court may have made in imposing the life term.

Carpenter claims, however, that he only agreed to lifetime supervision to encourage the court to grant his requested downward variance. However, his

22

argument cannot be squared with what his attorney actually said at the sentencing hearing. As we've explained, counsel argued for a life term of supervised release in its own right, claiming that it would mean that Carpenter would "always" have access to therapy, and that it would help to safeguard the public. Counsel did not say that a life term of supervised release was appropriate only if the court decided to give Carpenter a downward variance. Such a claim would have been utterly unconvincing, because whether or not Carpenter received 56 months or 97 months in prison would have had no bearing on his subsequent need for supervision and treatment upon his release.

Moreover, even if Carpenter's request for lifetime supervision was meant to induce the court to sentence him to a shorter prison term, "a criminal defendant may not make an affirmative, apparently strategic decision at trial and then complain on appeal that the result of that decision constitutes reversible error." United States v. Jernigan, 341 F.3d 1273, 1290 (11th Cir. 2003). Indeed, "[t]his is precisely the situation that the invited error doctrine seeks to avert." Id. After all, Carpenter made essentially the same choice as the defendant made in Love: to ask for supervised release "in lieu of additional jail time." Love, 449 F.3d at 1157. Carpenter cannot "cry foul on appeal," Brannan, 562 F.3d at 1306, simply because his strategy may have backfired.

23

B.

Next, we consider Carpenter's challenges to two of the special conditions of his supervised release: that he not possess or use a computer, except in connection with employment as approved by the district court, or another access device, and that he not possess sexually explicit material involving adults. Carpenter did not make a specific and contemporaneous objection to either condition, and so our review is for plain error. Even if we were to assume that the district court committed some error in imposing these conditions, no binding authority established that the error was plain.

Generally, "[w]e review the imposition of special conditions of supervised release for abuse of discretion." United States v. Moran, 573 F.3d 1132, 1137 (11th Cir. 2009). "Where a defendant fails to clearly state the grounds for an objection in the district court, however, he waives the objection on appeal and we are limited to reviewing for plain error." United States v. Zinn, 321 F.3d 1084, 1087 (11th Cir. 2003). Specifically, a defendant must "articulate the specific nature of his objection to a condition of supervised release so that the district court may reasonably have an opportunity to consider it." Id. at 1090 n.7.[2] And he must

_____

[2] Carpenter argues that our holding in Zinn is outdated in light of United States v. Booker, 543 U.S. 220 (2005), and its progeny, and suggests that a defendant today need only object to the reasonableness of his sentence as a whole. However, Booker has no bearing on the specificity with which a defendant must object to particular components of his sentence. In several cases since Booker, we have reiterated that a defendant must specifically object to the conditions of

24

do so in a manner "sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." United States v. Straub, 508 F.3d 1003, 1011 (11th Cir. 2007) (citation and internal quotation marks omitted). A sweeping, general objection is insufficient to preserve specific sentencing issues for review. United States v. Gonsalves, 121 F.3d 1416, 1420-21 (11th Cir. 1997).

Before the district court, Carpenter never once objected to the special conditions barring him from possessing a computer, access device, or adult pornography. The presentence investigation report expressly recommended that the district court impose the conditions barring him from possessing a computer or pornography, but Carpenter made no objection when the PSI was made available to him. When Carpenter filed a sentencing memorandum in advance of the hearing, that filing also made no mention of these two conditions. Then, at the hearing, neither Carpenter nor his counsel said a word about the conditions. Indeed, as we've explained, counsel specifically requested a term of supervised release. The district court imposed the requested sentence, and recited the conditions of Carpenter's supervision in copious detail, including the challenged conditions. Afterwards, the court asked if Carpenter had any objections, and counsel said only

---

supervision that he seeks to challenge on appeal. See, e.g., Moran, 573 F.3d at 1137; United States v. Nash, 438 F.3d 1302, 1304 (11th Cir. 2006) (per curiam).

25

this: "In order to preserve Mr. Carpenter's appellate rights, I would object to the substantive and procedural reasonableness of the sentence."  This abstract and general objection did not inform the district court of Carpenter's specific objections to the conditions of his supervised release, and Carpenter thereby deprived the court of the opportunity to consider (and if necessary correct) them.  Thus, we may only review the conditions for plain error.

We exercise plain error review "sparingly, and only in those circumstances in which a miscarriage of justice would otherwise result."  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (citations and internal quotation marks omitted).  We may only reverse the district court on the basis of plain error if we find four things: "First, there must be an error.  Second, the error must be plain.  Third, the error must affect substantial rights of the defendant.  Fourth, the error must seriously affect the fairness, integrity, or public reputation of a judicial proceeding."  United States v. Humphrey, 164 F.3d 585, 588 n.3 (11th Cir. 1999).  To show error, Carpenter must show that the district court abused its discretion in imposing the challenged conditions.  The district court must consider whether each condition (1) "is reasonably related to [the § 3553(a) factors]"; (2) "involves no greater deprivation of liberty than is reasonably necessary" to serve the purposes of punishment specified in § 3553(a)(2); and (3) "is consistent with any pertinent policy statements issued by the Sentencing Commission."  18 U.S.C. § 3583(d).

26

And the district court "must consider the history and characteristics of the defendant, provide both adequate punishment and rehabilitation of the defendant, and protect society at large." Moran, 573 F.3d at 1139. Importantly, "a condition is not invalid simply because it affects a probationer's ability to exercise constitutionally protected rights." Zinn, 321 F.3d at 1089.

To show plain error, Carpenter must show "an error that is obvious and is clear under current law." Humphrey, 164 F.3d at 588 (citation and internal quotation marks omitted). "[W]here neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (per curiam). In other words, Carpenter must show that some controlling authority clearly established that the court erred in imposing the challenged conditions. He cannot. Therefore, we need not, and do not, decide whether the court indeed erred, nor whether Carpenter can meet the other requirements of plain error review.

1.

The first condition Carpenter challenges is the condition stipulating that he "shall not possess or use any computer or access device; except that [he] may, with the prior approval of the [district court], use a computer in connection with authorized employment." We discern no plain error in the district court's

imposition of this condition.  Carpenter's crime was a sex offense involving the use of a computer, and so the Guidelines expressly recommended a condition limiting his computer access.  U.S.S.G. § 5D1.3(d)(7)(B); id. § 5D1.2 n.1. Carpenter does not point to a single decision of the Supreme Court or this Court invalidating such a condition on facts similar to this case, and we have been unable to find any.

To the contrary, our cases have uniformly upheld conditions prohibiting defendants convicted of sex offenses from accessing a computer or the Internet for the duration of their supervised release.  Thus, for example, in United States v. Zinn, we upheld a condition stipulating that a defendant convicted of possessing child pornography "shall not possess or use a computer with access to any on-line service at any location, including employment, without written approval from the probation officer."  321 F.3d at 1087.  At the outset, we noted "the strong link between child pornography and the Internet, and the need to protect the public, particularly children, from sex offenders."  Id. at 1092.  While we agreed that "the Internet has become an important resource," we emphasized "the concomitant dangers of the Internet and the need to protect both the public and sex offenders themselves from its potential abuses."  Id. at 1093.  We also found the condition at issue to be narrowly tailored because the defendant could still "use the Internet for valid purposes by obtaining his probation officer's prior permission."  Id.  Thus,

we concluded that the district court did not abuse its discretion in imposing the condition. Id. In every case since Zinn, we have upheld conditions limiting computer access, emphasizing that such access could well enable a sex offender to offend once again. See, e.g., Tome, 611 F.3d at 1375-78; Moran, 573 F.3d at 1140-41; United States v. Taylor, 338 F.3d 1280, 1284-85 (11th Cir. 2003) (per curiam).

Carpenter argues that the condition imposed in his case differs in two ways from the conditions we have previously upheld: first, it extends for the duration of his supervised release, i.e. life, and second, it prohibits any computer usage outside the context of employment. Neither difference establishes that the district court plainly erred. For starters, no case of the Supreme Court or this Court says that a condition like this one cannot be imposed. Without such a case, there is no precedent directly resolving Carpenter's claim in his favor, and there can be no plain error. Moreover, to the extent that the duration of the condition makes a difference, we reiterate that Carpenter invited the court to impose a life term, and he may not disavow that decision on appeal. As for the broad scope of the condition, the district court possessed significant discretion to tailor it to the facts of Carpenter's case. We see no plain error in the way the court exercised that discretion.

Carpenter also directs our attention to cases from other courts invalidating prohibitions on computer usage.  To be sure, at least one of our sister circuits has struck down a condition barring computer access for life with no exceptions.  See United States v. Voelker, 489 F.3d 139, 144-45 (3d Cir. 2007).  But the condition in the instant case is meaningfully different, because it allows an exception for employment.  Cf. id. at 145 (characterizing the challenged condition as "all-encompassing, severe, and permanent").  Moreover, other courts have upheld conditions limiting computer access for life.  See, e.g., United States v. Morais, 670 F.3d 889, 896 (8th Cir. 2012) (upholding a lifetime restriction where the defendant had used the Internet "to obtain thousands of images of child pornography"); United States v. Daniels, 541 F.3d 915, 924 (9th Cir. 2008) (upholding a lifetime restriction where the defendant assented to the condition knowing a life term could be imposed); see also United States v. Miller, 665 F.3d 114, 132 (5th Cir. 2011) (upholding a twenty-five year restriction).  In light of this disagreement among the circuits, any error the district court may have made was not an obvious or clear one.  See Aguillard, 217 F.3d at 1321.  We, therefore, conclude that the district court committed no plain error in imposing the condition limiting Carpenter's computer access.[3]

---

[3] However, we do not decide whether imposing such a condition on facts similar to this case would constitute an abuse of discretion where a defendant specifically objects to the condition

2.

Finally, Carpenter challenges the condition requiring him not to "buy, sell, exchange, possess, trade, or produce visual depictions of minors or adults engaged in sexually explicit conduct." He claims that the condition is unduly restrictive because it bars him from possessing legal, adult pornography. This argument fails as well on plain error review, because Carpenter does not cite to any binding authority holding that a restriction on possessing all forms of pornography is substantively unreasonable. There is no Supreme Court precedent establishing that such a condition is impermissible. Nor has this Court reached such a conclusion, as Carpenter himself admits.

Carpenter again refers to several cases from our sister circuits, this time invalidating prohibitions on possessing adult pornography. These cases are readily distinguished. Thus, for example, in United States v. Perazza-Mercado, the First Circuit found "no suggestion in the [PSI] or at sentencing that [the defendant] had abused or even possessed pornography in the past." 553 F.3d 65, 76 (1st Cir. 2009). Here, of course, the record furnishes ample support for that conclusion. United States v. Voelker, a case in the Third Circuit, did not involve plain error review, and struck the prohibition down in light of existing Third Circuit precedent. 489 F.3d at 155. Two other cases -- United States v. Stoterau, 524 F.3d

during sentencing.

31

988, 1002-03 (9th Cir. 2008), and United States v. Loy, 237 F.3d 251, 267 (3d Cir. 2001) -- held only that the term "pornography," a term not found in the condition here, was unconstitutionally vague. Moreover, several other cases involving child pornography offenders have upheld prohibitions on the possession of adult pornography. See, e.g., United States v. Rearden, 349 F.3d 608, 620 (9th Cir. 2003) ("[T]he court did not plainly err in limiting [the defendant's] possession of materials depicting sexually explicit conduct because the condition furthered the goals of rehabilitating him and protecting the public."); United States v. Ristine, 335 F.3d 692, 694-95 (8th Cir. 2003) ("[T]he ban on pornography is appropriately tailored to serve its dual purposes of promoting [the defendant's] rehabilitation and protecting children from exploitation."). Once more, we are faced with an open question of law, upon which the circuits are split -- which means there can be no plain error. Accordingly, we reject this challenge as well.[4]

---

[4] Finally, we observe that the terms of Carpenter's supervised release are not written in stone. He may, as counsel for the United States readily conceded at oral argument, petition the district court to revise the conditions of supervised release or, after serving at least one year of supervised release, petition the district court to shorten or terminate his supervised release. 18 U.S.C. § 3583(e)(1), (2). Indeed, a district court may reduce the conditions of supervised release pursuant to the "provisions applicable to the initial setting of the terms and conditions of post-release supervision." Id. § 3583(e)(2). And a district court may shorten the term of supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." Id. § 3583(e)(1).

IV.

In sum, we conclude: (1) Carpenter's sentence of incarceration is neither procedurally nor substantively unreasonable; (2) Carpenter invited any error the district court may have made in sentencing him to a life term of supervised release; and (3) Carpenter failed to object to the conditions of his supervised release during sentencing, and he can show no plain error in the conditions the district court imposed.  Thus, we affirm the district court's judgment in its entirety.

**AFFIRMED.**