[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-11987
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cr-20504-MGC-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SANDY DE LA FE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 31, 2021)

Before WILSON, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Sandy De La Fe appeals the revocation of his supervised release and the eight-

month prison sentence imposed upon revocation. *See* 18 U.S.C. § 3583(e). On

appeal, De La Fe argues that the district court abused its discretion in accepting his waiver of a final revocation hearing without advising him of the nature of the violations or his rights to confront witnesses and to present mitigating evidence, as required by Federal Rule of Criminal Procedure 32.1.  He also argues that the eight-month revocation sentence is procedurally and substantively unreasonable. After careful review, we affirm.

## I.

In 2016, De La Fe pled guilty to conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.  He was sentenced to twenty-two months in prison followed by three years of supervised release.  He began serving his term of supervised release in August 2017.

A probation officer petitioned the district court to revoke De La Fe's supervised release in July 2020, just before it terminated.  In a superseding petition filed in October 2020, the probation officer alleged six violations of the terms of release: (1) committing the offense of cash deposit fraud on September 16, 2019; (2) committing the offense of grand theft over $300 on September 28, 2019; (3) committing the offense of uttering forged bills on September 28, 2019; (4) failing to satisfy court-ordered restitution; (5) leaving the judicial district without first obtaining permission of the probation officer; and (6) incurring debt without first obtaining permission of the probation officer.  The probation officer provided

additional details about the first three violations in a sealed "Report and Recommendation" dated August 28, 2020. For the first violation, De La Fe was alleged to have obtained $2,150 from a bank using a forged check. For the second and third violations, De La Fe was alleged to have negotiated three counterfeit checks at different locations, causing a loss of $5,640 to a single bank. The guideline range for these violations was four to ten months.

At the outset of the final revocation hearing in May 2021, defense counsel informed the district court that De La Fe "will be admitting violations 2 through 6, and the government is not proceeding on the first violation." The following brief colloquy ensued:

> THE COURT: Mr. De La Fe, do you understand that you have a right to have a hearing in regard to the violation notice?
>
> THE DEFENDANT: Yes, I do understand.
>
> THE COURT: And it's your wish to waive a hearing and proceed via Zoom in terms of your sentence in regard to this matter?
>
> THE DEFENDANT: Yes.

The district court accepted De La Fe's "admission of responsibility as to violation numbers 2 through 6" and then asked the parties for their sentencing recommendations.

Defense counsel requested a "non-incarcerative sentence" of "an additional two-plus years of supervision as well as community service." In support, counsel

argued that De La Fe was a "hardworking person" with developmental disabilities who worked two jobs to provide for his partner and four-month-old child.[1]  Because De La Fe was "the only one who pays the rent and maintains their household," counsel argued, putting him in jail even briefly would "destabilize" their lives and do nothing to help repay his victims.  Counsel further noted that De La Fe was up to date on his monthly restitution payments, and that there had "been no other criminal conduct or issues with Mr. De La Fe" while on supervised release, apart from the criminal charges in violations 2 and 3.  De La Fe pled guilty to those charges and was sentenced to three years of probation and ordered to pay restitution.  Counsel also noted that De La Fe was HIV positive, which put him at increased risk if he contracted COVID-19 while incarcerated.

The government requested a term of incarceration, describing De La Fe as a "recidivist fraudster" who, after serving a prison sentence for healthcare fraud, again engaged in fraudulent conduct "in multiple jurisdictions" and "with multiple victims."

De La Fe personally addressed the court, expressing regret over the "mistake" he had made and stressing that he was the father of a four-month-old and the "sole

---

[1] De La Fe also provided support for a ten-year-old child who did not live with him, according to defense counsel.

support" for his family. He also disclosed that he had recently been diagnosed with

AIDS. He continued,

> So, your Honor, please, you know, I agree with anything you say. I know this has been a mistake. Impose whatever sanctions you believe. I admit everything. More probation, more money that I would need to pay, but, please, your Honor, no jail time, please.
>
> So please, your Honor, I have a disease that is very ugly. I have to look after my family. I have to look after my four month old. I know that this happened. I admit it, but, your Honor, this happened more than two years ago, and I assure you it will never happen again.

The district court revoked De La Fe's supervised released and sentenced him

to eight months in prison with no supervised release to follow, "find[ing] that a

sentence within the advisory guideline range is appropriate." The court stated that

it had reviewed the statements of all the parties and the information contained in the

violation report. The court asked if the parties had any objections, and De La Fe

"object[ed] to both the substantive unreasonableness of the sentence as well as the

procedural imposition of sentence." The court then ended the hearing by advising

De La Fe of his appellate rights. De La Fe appealed.

## II.

We first consider De La Fe's challenge to the revocation of his supervised

release on grounds of "fundamental fairness." We ordinarily review the revocation

of supervised release for an abuse of discretion. *United States v. Vandergrift*, 754

F.3d 1303, 1307 (11th Cir. 2014). But where a defendant fails to object to a

procedural error "at the time of his sentencing, we review for plain error." *Id.* To prevail under that standard, a defendant "must demonstrate (1) that the district court erred; (2) that the error was plain; and (3) that the error affected his substantial rights" in a way that seriously affects "the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up).

Defendants "are entitled to certain minimal due process requirements" in supervised release revocation proceedings under 18 U.S.C. § 3583(e)(3). *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). "[T]hese same minimal due process requirements" are incorporated in Federal Rule of Criminal Procedure 32.1, which governs revocation proceedings. *Id.* During a revocation proceeding, according to Rule 32.1(b), the defendant is entitled to (1) written notice of the claimed violations, (2) disclosure of the evidence, (3) an opportunity to be heard in person and present evidence and confront witnesses, (4) notice of the right to counsel, and (5) an opportunity for allocution. Fed. R. Crim. P. 32.1(b)(A)–(E).

De La Fe contends that the district court erred when it accepted his admission to violating the terms of his supervised release without confirming that he understood the rights he would be waiving by admitting the violations and proceeding to sentencing. Because De La Fe raises this argument for the first time on appeal, we review for plain error only. *See Vandergrift*, 754 F.3d at 1307.

6

Here, De La Fe has not established plain error. If any error was committed by the district court in accepting De La Fe's admission to violating his supervised release, it was not plain. Unless the explicit language of a statute or rule resolves an issue, "there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015) (quotation marks omitted). De La Fe does not identify any authority requiring a court to address a defendant personally to make an on-the-record determination that he understood what rights he was waiving when admitting to violating the conditions of his supervised release. *See, e.g.*, *United States v. Johns*, 625 F.2d 1175, 1176 (5th Cir. 1980) (declining to resolve that issue in the context of probation revocation proceedings).[2] And the court here otherwise ensured that De La Fe understood he had a right to a hearing to contest the alleged violations and that he wished to waive that process and proceed directly to sentencing.

Nor has De La Fe shown that any error affected his substantial rights. "Substantial rights are affected if there is a reasonable probability of a different result absent the error." *Hesser*, 800 F.3d at 1325. Any error was harmless in this case because there is no real possibility of a different result absent the error. *See Johns*, 625 F.2d at 1176 (holding that a court's failure to determine whether the defendant

---

[2] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

"understood what rights she was waiving when she admitted through counsel" to a probation violation was harmless).  By the time of the hearing, De La Fe had pled guilty to the criminal charges underlying violations 2 and 3, which shows he had no grounds to contest those violations at the hearing.  Nor did he express any intent to contest the violations.  Instead, he personally and repeatedly affirmed that he accepted responsibility for his actions, and he welcomed "whatever sanctions" short of jail time.

For these reasons, the district court did not plainly err when it revoked De La Fe's supervised release without personally questioning him on whether his admission to violating the conditions of his release was knowing and voluntary.

## III.

Next, De La Fe argues that the district court committed several procedural errors in sentencing him, including failing to consider the 18 U.S.C. § 3553(a) sentencing factors or make an individualized assessment, basing its sentence on erroneous facts, and failing to adequately explain its chosen sentence.

The parties dispute whether plain-error review applies in light of De La Fe's nonspecific objection to "the procedural imposition of sentence." *See United States v. Carpenter*, 803 F.3d 1224, 1232–34, 1238 (11th Cir. 2015) (stating that "[a] sweeping, general objection is insufficient to preserve specific sentencing issues for review," but, at the same time, appearing to conclude that the defendant's general

objection to "procedural reasonableness" was sufficient to preserve arguments for procedural errors such as failing to adequately explain the sentence and failing to consider the § 3553(a) factors). We need not resolve whether the objection was sufficient to preserve the procedural issues raised on appeal because his arguments fail even under our ordinary standards of review.

**A.**

We review sentencing decisions under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). In reviewing a sentence, our usual first step is to "ask whether the sentencing court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Carpenter*, 803 F.3d at 1232.

District courts are authorized to "revoke a term of supervised release" and impose a prison sentence when a defendant violates a condition of supervised release. 18 U.S.C. § 3583(e)(3). A sentence imposed upon revocation must be "sufficient, but not greater than necessary," to comply with the sentencing goals of deterrence, protection of the public, and rehabilitation of the defendant. *See* 18 U.S.C. § 3583(c) (requiring district courts to "consider[] the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and

9

(a)(7)"). The court must also consider the nature and circumstances of the violation, the history and characteristics of the defendant, the sentencing guidelines, and the need to provide restitution, among other factors. *See id.*

After settling on an appropriate sentence, the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The court should do enough to show "that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 357 (2007). It is not required to discuss each § 3553(a) factor or argument, so long as the record reflects that the court considered the § 3553(a) factors and the parties' arguments. *Carpenter*, 803 F.3d at 1232. The adequacy of the court's explanation depends upon the circumstances of the case. *Rita*, 551 U.S. at 356. A judge's decision simply to apply the guidelines usually will not "require lengthy explanation." *Id.* at 356–57. "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why [she] has rejected those arguments." *Id.* at 357.

## B.

Here, the record does not support De La Fe's claims that the district court committed significant procedural error at his revocation sentencing. First, the court did not fail to consider the § 3553(a) factors. Before imposing sentence, the court

considered the probation officer's violation report, it listened to the parties' arguments for and against a sentence that included incarceration, and it heard from De La Fe personally in mitigation. These statements touched on several § 3553(a) factors, including the nature and circumstances of the violations, De La Fe's criminal history and family circumstances, the sentencing guidelines, the need to provide restitution, and whether a prison sentence was appropriate in the circumstances of the case. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C), (a)(4), (a)(5), and (a)(7). Given this backdrop, the court's statement that it had reviewed the parties' statements is sufficient to show that its choice of sentence was informed by these § 3553(a) factors and the parties' arguments about them. *See Carpenter*, 803 F.3d at 1232.

Second, the district court's explanation was "brief but legally sufficient." *Rita*, 551 U.S. at 358. After considering the parties' arguments, De La Fe's statements in mitigation, and the guideline range, the court said it found that "a sentence within the advisory guideline range is appropriate." While the court did not further explain its reasons for that decision or its choice of eight months, the "context and the record" supply sufficient "reasoning underl[ying] the judge's conclusion." *Id.* at 358–59 (describing as "brief but legally sufficient" a district court's statement finding that the guideline range was not "inappropriate" and that a sentence at the bottom of the guideline range was "appropriate"). The record indicates the court found that De La Fe's criminal conduct—cashing three fraudulent

11

checks not long after serving time in prison for healthcare fraud—was a serious breach of his supervised release, and that his family circumstances, though compelling, did not warrant less severe consequences.  On this record, we are satisfied that the court "considered the parties' arguments and ha[d] a reasoned basis" for its choice of sentence.  *Id.* at 357.

Finally, De La Fe's claim that the district court based its sentence on clearly erroneous facts is too speculative to support reversal.  Although the government's argument about "multiple jurisdictions" and "multiple victims" arguably referenced violation 1, which De La Fe did not admit and the government did not prove, nothing in the record indicates that the court relied on those statements or on violation 1 when selecting the sentence.  Moreover, even if violations 2 and 3 did not involve multiple jurisdictions or victims, the record still reflects that De La Fe negotiated three counterfeit checks at different locations while on supervised release for healthcare fraud.

Accordingly, De La Fe has not established that the district court committed a significant procedural error in sentencing him.

**IV.**

Satisfied that no procedural error was committed, we turn to "whether the sentence is substantively unreasonable under the totality of the circumstances and in light of the § 3553(a) factors."  *Carpenter*, 803 F.3d at 1232.  We apply an abuse-

12

of-discretion standard, which "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *Id.* at 1234.

"The weight accorded to any one § 3553(a) factor is a matter committed to the sound discretion of the district court, and a court may attach great weight to one factor over others." *United States v. Taylor*, 997 F.3d 1348, 1354 (11th Cir. 2021) (quotation marks omitted). "We may vacate the sentence only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by imposing a sentence that falls outside the range of reasonableness as dictated by the facts of the case." *Id.* (quotation marks omitted). "We may not—it bears repeating—set aside a sentence merely because we would have decided that another one is more appropriate." *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (*en banc*).

Because De La Fe's eight-month revocation sentence was within the advisory guideline range, we expect it to be reasonable. *See United States v. Castaneda*, 997 F.3d 1318, 1332 (11th Cir. 2021). And De La Fe has not convinced us otherwise. His conduct was serious. He was convicted of negotiating three fraudulent checks while on supervised release for healthcare fraud.

While De La Fe presented compelling family circumstances in mitigation, the district court was not required to vary downward due to hardship to others caused by his incarceration. *Cf.* 28 U.S.C. § 994(e) (directing that the guidelines should

13

"reflect the general inappropriateness of considering the . . . family ties and responsibilities . . . of the defendant"). Rather, this factor, like all the others, was "committed to the sound discretion of the district court," and we may not substitute our judgment for that of the district court or reweigh the factors ourselves. *See Taylor*, 997 F.3d at 1354. And even if we might have decided that a different sentence was appropriate had it been our call to make, the district court's eight-month revocation sentence is not outside the range of reasonableness as dictated by the facts of the case. *See id.* at 1355; *Irey*, 612 F.3d at 1191.

For these reasons, we must affirm De La Fe's eight-month revocation sentence as substantively reasonable.

**AFFIRMED.**

14