[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13084
_____

D.C. Docket No. 7:19-cr-00031-LSC-JEO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEVONTE JAISHUN TUCKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 22, 2020)

Before ROSENBAUM, LAGOA and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Devonte Jaishun Tucker appeals his sentence of 120

months' imprisonment for being a felon in possession of a firearm.  On appeal,

Tucker challenges the procedural and substantive reasonableness of his sentence. Upon careful review, we affirm.

## I.  BACKGROUND

### A.    Offense Conduct[1] and Guilty Plea

Around midnight on November 15, 2018, law enforcement officers observed a Chevrolet sedan matching the description of a car reported stolen.  The officers confirmed that the Chevrolet was stolen and attempted to stop the car.  At first, the Chevrolet driver did not stop, but he eventually did stop in the cul-de-sac of an apartment complex.  The driver (who was never identified) exited the car, while Tucker stayed in the passenger seat.

Officer Joshua Smith exited his patrol car, drew his firearm, and pointed it at the Chevrolet.  Then, passenger Tucker moved into the driver's seat of the Chevrolet, turned the wheels of the car toward Officer Smith, and accelerated toward Officer Smith.  Because it looked like Tucker was going to hit Officer Smith and was ignoring commands to stop, Officer Smith fired rounds at the car. After Officer Smith began firing, Tucker swerved the car away from Officer Smith and drove away at a high speed.

Officers Smith and Jacob Morris chased after the Chevrolet with their sirens

---

[1]The record of the offense conduct is based on a combination of the unobjected-to facts in the presentence investigation report and the evidence adduced at the sentencing hearing.

and lights activated.  Tucker continued to drive down busy streets, reaching  speeds of 100 miles per hour, running a stop sign and a red light, jumping a curb, and almost hitting another car.  After a five-minute car chase, Tucker jumped out of the still-moving Chevrolet and fled on foot wearing a black backpack.  Officers Morris and Smith on foot chased Tucker and, less than one minute later, found him hiding behind a home with his backpack either still on his person or next to him.  The officers apprehended Tucker, searched the black backpack, and found a pistol inside.  In a post-arrest interview, Tucker—a convicted felon—admitted to possessing the backpack containing the firearm and stated the initial driver of the Chevrolet gave it to him.

In January 2019, a federal grand jury indicted Tucker with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Tucker pled guilty to the charge, without the benefit of a plea agreement.

B.    Presentence Investigation Report ("PSI")

The PSI assigned Tucker a base offense level of 14 because he was a convicted felon at the time of the November 2018 offense.  Tucker's base offense level of 14 was: (1) increased by two levels because the pistol in his backpack was reported stolen; (2) increased by two levels because he obstructed justice and recklessly endangered others when he fled from the officers both by car, reaching 100 miles per hour and almost striking an officer, and by foot while carrying a

3

firearm; and (3) reduced by three levels because he accepted responsibility. Accordingly, Tucker's resulting total offense level was 15.

Tucker, who was 23 at the time of the November 2018 offense, had a lengthy criminal history beginning at age 13. Tucker's juvenile adjudications, which received zero criminal history points, included: (1) second-degree robbery at age 13; (2) first-degree receiving stolen property at age 13; (3) domestic violence at age 14; (4) two first-degree theft of property adjudications at age 14; (5) two breaking and entering into a vehicle adjudications at age 14; (6) breaking and entering into a vehicle at age 15; and (7) first-degree robbery at age 15. Tucker's adult convictions, which resulted in four criminal history points, included: (1) a youthful offender conviction at age 17; (2) third-degree burglary at age 19; (3) aggravated assault at age 21; (4) having no driver's license, failing to maintain insurance, and having a foreign warrant at age 21; (5) second-degree possession of marijuana at age 22; and (6) resisting arrest at age 22.[2]

Tucker's total offense level of 15 and criminal history category of III yielded an advisory guidelines range of 24 to 30 months' imprisonment. The PSI noted that the statutory maximum term of imprisonment for the firearm offense was 120 months. See 18 U.S.C. § 924(a)(2).

---

[2]Tucker also had other pending charges, including: (1) third-degree theft of property at age 20; (2) first-degree receiving stolen property at age 23; and (3) leaving the scene of an accident at age 23.

Tucker's PSI recounted his family background, mental and emotional health, and substance abuse. Tucker was raised by his mother and had a physically abusive step-father. His father was serving prison sentences for murder convictions. As a child, Tucker was diagnosed with bi-polar mania, depression, personality disorder, and defiant disorder. Tucker was treated for his disorders at various facilities and hospitals and took prescription medication. Before getting on the right medication, Tucker occasionally heard voices instructing him to harm himself or others. Because of his depression, Tucker unsuccessfully attempted suicide three times between 2007 and 2013. Tucker, however, reported no current voices in his head or suicidal ideations, owing to medication he began taking in 2019.

Tucker also suffered from relatively severe substance abuse. At age 12, he began using marijuana and alcohol. Eventually, he smoked four or five "blunts" and drank a bottle of liquor per day. While he had not used alcohol since age 22, his last use of marijuana was on the day of the instant November 2018 offense. Tucker also used cocaine daily, ecstasy weekly, and methamphetamine weekly, up until the time of the instant offense.

Tucker objected to the PSI's factual assertion that he accelerated towards Officer Smith as he escaped in the Chevrolet. Tucker's counsel filed a sentencing memorandum submitting that a 24-month sentence, at the low end of the advisory

5

guidelines range, was reasonable because it would: (1) sufficiently deter him from crime; (2) reward him for his acceptance of responsibility; and (3) account for his mental illness, substance abuse issues, and lack of male role models, all of which helped explain his bad choices during the November 2018 incident.

Tucker's counsel also filed a report by a mitigation specialist who reviewed Tucker's family background, mental health history, and substance use history. The report recommended the district court consider these mitigating factors: (1) Tucker was raised without a father because his father was incarcerated for most of his childhood; (2) Tucker was exposed to domestic violence since age 6; (3) he never had a positive male role model and all the influential men in his life exhibited patterns of violence; (4) Tucker was conditioned to believe that violence was a normal way of life; (5) he had a "serious and persistent mental illness" that was not consistently treated; (6) Tucker's untreated mental illness led to his delinquency, which was sanctioned by the juvenile correction system without addressing the underlying causes of the delinquency; (7) Tucker, who had not regularly taken his psychiatric medications since he lost health insurance at age 19, was not on his medications at the time of the November 2018 offense; (8) he self-medicated with alcohol, cocaine, and marijuana, which exacerbated his psychotic symptoms; and (9) Tucker carried a firearm in self-defense, as he had been shot several times in the last three years and his cousin was murdered.

C.    Sentencing Hearing

At sentencing, the district court adopted the PSI's factual findings, guidelines calculations, and advisory guidelines range of 24 to 30 months. In response to Tucker's factual PSI objection, the government called Officers Smith and Morris, and Officer Smith testified that, as Tucker was fleeing from the cul-de-sac in the Chevrolet, he accelerated towards Officer Smith in an apparent attempt to hit him.

The district court asked Tucker whether he had any arguments "in mitigation or otherwise." Tucker's counsel again requested a sentence at the low end of the advisory guidelines range and mentioned his sentencing memorandum, without discussing its contents. Counsel argued that the low end was sufficient because Tucker's criminal history was not extensive, his conduct during the car chase was already taken into account by the obstruction and reckless-endangerment enhancement, and he did not attempt to run over Officer Smith or kill him. Tucker allocuted and apologized for his actions.

The district court asked the government for its recommendation. The government requested an upward variance to a 40-month sentence because the obstruction and reckless-endangerment enhancement grossly understated Tucker's actions, which encompassed driving the Chevrolet at Officer Smith, endangering other cars on the road during the high-speed chase, and running stop signs and red

lights.

The district court stated that it was required to impose a sentence that was sufficient but not greater than necessary to accomplish the sentencing goals set out in 18 U.S.C. § 3553(a) and that it needed to discuss many of those goals.[3]  The district court rejected Tucker's argument that his criminal history was not extensive and went through his numerous juvenile adjudications (starting at age 13) and his adult convictions.  Next, the district court considered Tucker's offense conduct and found that he engaged in an extremely violent "crime spree" that endangered others, noting that it was a wonder that no one else got hurt.  Specifically, the district court found that Tucker: (1) attempted to hit Officer Smith with the Chevrolet so that he could get away, thereby assaulting him with a deadly weapon;[4] (2) led the officers on a high-speed chase on busy streets while running stop signs and red lights; and (3) left the Chevrolet running and rolling forward when he continued fleeing on foot.

The district court found that Tucker's criminal history and instant offense conduct demonstrated that: (1) Tucker thought he could "get away with anything," "continue his criminal conduct," and "do whatever he pleases in total disrespect for

---

[3]Without explicitly referencing § 3553(a), the district court stated that it was considering "the sentencing goals set forth in the federal sentencing statutes."  We surmise, and Tucker does not dispute, that the district court was referring to the § 3553(a) factors.

[4]On appeal, Tucker does not challenge the district court's finding that he attempted to hit Officer Smith with the Chevrolet.

all laws[,] . . . for society[,] and for the protection of anyone else"; and (2) thus, society needed to be protected from Tucker. The district court also found that: (a) Tucker's criminal history and instant offense conduct were "grossly underestimated" and "under considered" by the guidelines calculations; (b) a guidelines-range sentence was thus inappropriate; and (c) the only appropriate sentence was the maximum sentence available. Ultimately, the district court sentenced Tucker to the statutory maximum sentence of 120 months' imprisonment, followed by three years' supervised release.

Tucker objected to "the court going above the advisory guidelines [range]." In response, the district court reiterated that it was a wonder that Tucker did not kill anyone or himself during the crime spree, highlighted that he could have faced several more charges for his offense conduct, hoped that Tucker would learn his lesson before leaving prison, and indicated that Tucker would face an even longer prison sentence if he got in trouble again.

This is Tucker's appeal.

## II.  DISCUSSION

Tucker argues that his 120-month sentence is both procedurally and substantively unreasonable. We review a sentence's reasonableness under a deferential abuse-of-discretion standard. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). In applying this standard, we use a two-step process. Id.

First, we assess whether the district court committed any significant procedural error, such as failing to adequately explain its sentence or failing to consider the 18 U.S.C. § 3553(a) factors.[5]  Id.  Second, we determine whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances.  Id.  Tucker, as the party challenging his sentence, bears the burden of demonstrating that his sentence is unreasonable.  Id. at 1189.

A.    Procedural Reasonableness

Tucker argues that, in imposing his 120-month sentence, the district court procedurally erred by focusing solely on Tucker's criminal history and offense conduct without addressing the mitigating arguments raised in his sentencing memorandum regarding his mental health, substance abuse issues, and family background. In other words, Tucker argues that the district court procedurally erred by failing to explicitly discuss his non-frivolous mitigating evidence, in violation of 18 U.S.C. § 3553(c)'s requirement that a sentencing judge must, at the time of sentencing, state in open court the reasons for imposing the particular sentence.

When imposing a sentence outside of the advisory guidelines range, the district court "must consider the extent of the deviation and ensure that the

---

[5]The § 3553(a) factors of relevance include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public from the defendant's future crimes; (5) the need to provide the defendant with needed and effective medical care and correctional treatment; and (6) the advisory guidelines range.  18 U.S.C. § 3553(a)(1)-(2), (4).

justification is sufficiently compelling to support the degree of the variance." United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010) (quotation marks omitted). "[A] major departure should be supported by a more significant justification than a minor one." Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007).

That being said, the district court is not required to incant specific language or articulate its consideration of each § 3553(a) factor, as long as the record as a whole demonstrates the district court's consideration of the § 3553(a) factors. United States v. Bonilla, 463 F.3d 1176, 1182 (11th Cir. 2006). The central inquiry is whether the district court, in pronouncing its chosen sentence, set forth enough to satisfy us that it considered the parties' arguments and had a reasoned basis for exercising its own legal decisionmaking authority. United States v. Carpenter, 803 F.3d 1224, 1232 (11th Cir. 2015); see Gall, 552 U.S. at 50, 128 S. Ct. at 597 (providing that the district court's explanation must "allow for meaningful appellate review" and "promote the perception of fair sentencing"). As the Court held in Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007), "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."

The government argues that Tucker did not adequately object to this asserted

11

procedural error in the district court, and therefore that we should review only for plain error. We agree. In the district court, after the district court explained at length its reasons for imposing the statutory maximum sentence, Tucker's only objection was to "the court going above the advisory guidelines." Sent. Hr'g at 39. Tucker made no objection based on the district court's failure to discuss or consider Tucker's mitigating evidence which had been set out in his sentencing memorandum and the attached mitigation report.

Accordingly, we review Tucker's argument on appeal – that the district court procedurally erred by failing to explicitly discuss his non-frivolous mitigating evidence, from which Tucker urges us to infer that the district court failed to consider his mitigating arguments – only for plain error. "When a party does not object to an issue at sentencing, we review only for plain error." United States v. Cingari, 952 F.3d 1301, 1305 (11th Cir. 2020); United States v. Parks, 823 F.3d 990, 994-95 (11th Cir. 2016) (concluding that a defendant's "sweeping, general objection" to the length of his sentence was insufficient to apprise the district court of his objection targeting § 3553(a) (quotation marks omitted)). For us to find plain error, Tucker must show that "(1) there is an error; (2) that is plain or obvious; (3) affecting his substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Cingari, 952 F.3d at 1305 (quotation marks omitted).

We conclude that Tucker has failed to demonstrate plain error. At the least, Tucker has failed to show that the alleged error was plain or obvious, or that it affected his substantial rights.

It is true that the case law does clearly establish that a sentencing judge must consider a defendant's non-frivolous arguments for a lower sentence. See Rita, 551 U.S. at 356, 127 S. Ct. at 2468 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments."). However, it is not at all plain or obvious that the sentencing judge is required to explicitly mention or discuss every non-frivolous argument. See United States v. Amedeo, 487 F.3d 823, 833 (11th Cir. 2007) ("[A]lthough the district court's sentencing order made no mention of evidence that arguably mitigated in Amedeo's favor under § 3553(a), we cannot say that the court's failure to discuss this 'mitigating' evidence means that the court erroneously 'ignored' or failed to consider this evidence in determining Amedeo's sentence.").

We also conclude that Tucker has failed to demonstrate that the district court's failure to mention or discuss his mitigating evidence adversely affected his substantial rights. To establish plain error, Tucker must carry his burden of demonstrating that his substantial rights were adversely affected. Cingari, 952 F.3d at 1305. This prong requires showing a reasonable probability of a different result absent the error. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir.

13

2005).  For at least two reasons, Tucker has failed to make this showing.  First, the district court provided a lengthy explanation of why it imposed the maximum statutory sentence.  The district court explained that the advisory guidelines range did not encompass an appropriate sentence and addressed numerous § 3553(a) factors in explaining why an above-guidelines-range sentence was required.  These factors included: (1) the serious, dangerous, and violent nature and circumstances of the November 2018 offense, during which Tucker assaulted an officer with the Chevrolet, led officers on a high-speed chase up to 100 miles per hour, drove erratically, endangered citizens, left the Chevrolet rolling forward after he jumped out, and fled on foot with a firearm; (2) Tucker's lengthy juvenile and adult criminal history; (3) the needs to promote respect for the law and to deter Tucker from future offenses since Tucker's actions demonstrated that he did "whatever he pleases in total disrespect for all laws[,] . . . for society[,] and for the protection of anyone else"; (4) the need to protect the public from Tucker and his crimes; and (5) the advisory guidelines range and the need to provide just punishment for the offense since a guidelines-range-sentence would not have accounted for the seriousness of the conduct or Tucker's criminal history.  See 18 U.S.C. § 3553(a)(1)-(2), (4).

The district court's express finding that "society need[ed] to be protected from this individual defendant" strongly suggests that the district court believed

14

that its sentence was necessary even though Tucker's family problems, mental illness, and substance abuse may have contributed to his criminal behavior. This suggestion is bolstered by the district court's finding that the "only sentence that [wa]s appropriate [wa]s the maximum that [it] could give him, which [wa]s the statutory maximum sentence." Sent. Hr'g at 37. Whatever the strength of this suggestion, Tucker has failed to show a reasonable probability that, instead, the district judge simply failed to consider his mitigating evidence and would have imposed a lighter sentence if he had.

Second, Tucker has also failed to show that the district court did not in fact consider his mitigating evidence. It is true that the district court did not expressly state that it had considered that evidence. However, there is absolutely nothing in the record to suggest that the judge did not consider it. Moreover, there is strong evidence that he did. The district court solicited such evidence, expressly asking Tucker's counsel whether he had any arguments "in mitigation or otherwise," id. at 29, to which counsel responded referring the court to his sentencing memorandum, although not discussing its content at the time. More significant, the district court expressly adopted the PSI findings, which described the gist of Tucker's mitigating evidence. Indeed, the PSI included the overwhelming majority of the details thereof as set forth in Tucker's sentencing memorandum and the attached mitigation report. Moreover, the supervised release provisions which the district

15

court imposed expressly take Tucker's mental health problems into consideration, indicating that the district court was cognizant thereof.  Thus, there is evidence that the district court did in fact consider Tucker's mitigating evidence.  The crucial point, however, is that Tucker has not carried his burden of showing that his substantial rights were adversely affected.

In sum, we conclude that there is evidence that the district court did in fact consider Tucker's non-frivolous mitigation argument and evidence.  For the foregoing reasons, it is clear that Tucker has failed to establish plain error.  Accordingly, we reject Tucker's argument that Tucker's sentence was procedurally unreasonable.

B.    Substantive Reasonableness

Tucker also has not shown that his sentence is substantively unreasonable.  A district court abuses its discretion on substantive reasonableness grounds when it (1) fails to consider relevant factors that were due significant weight, (2) accords substantial weight to an improper or irrelevant factor, or (3) clearly errs in its judgment in considering the proper factors.  Carpenter, 803 F.3d at 1234.  However, in reviewing the district court's sentence, we will not substitute our judgment and reweigh the relevant factors.  Id.  A district court is entitled to weigh certain § 3553(a) factors more heavily than others, and the weight it attaches to any particular factor is committed to its sound discretion.  United States v. Rosales-

Bruno, 789 F.3d 1249, 1254 (11th Cir. 2015).

This Court will not vacate a defendant's sentence as substantively unreasonable unless "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted). We may not presume that a sentence outside of the advisory guidelines range is unreasonable, and "we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Tome, 611 F.3d at 1378 (quotation marks omitted).

Here, while the district court varied upward from Tucker's 24-to-30-month advisory guidelines range and sentenced him to the statutory maximum of 120 months' imprisonment, we cannot say the upward variance was an abuse of discretion. As noted above, while Tucker was convicted only of being a felon in possession of a firearm, his offense conduct involved, as the district court put it, a dangerous and violent "crime spree." Within a short time frame, Tucker assaulted a police officer with a car, led officers on a high-speed chase up to 100 miles per hour on busy streets, drove erratically, ran red lights and stop signs, endangered citizens on the road and the officers involved in the chase, left the car rolling

17

forward as he jumped out, and ran on foot through a neighborhood while carrying a

firearm.  Tucker's lack of respect for the law and public safety is further

demonstrated by his lengthy criminal history.  While not resulting in many points,

Tucker's criminal history included at least nine juvenile adjudications and six adult

convictions.

Tucker contends that the district court weighed these factors too heavily,

while ignoring his mental health, substance abuse issues, and family upbringing,

each of which explained his behavior.  We cannot say, however, that the district

court abused its substantial discretion in weighing more heavily the several

§ 3553(a) factors set out above, especially the serious, dangerous, and violent

nature and circumstances of the November 2018 offense and Tucker's lengthy

juvenile and adult criminal history.  See 18 U.S.C. § 3553(a)(1)-(2), (4); Rosales-

Bruno, 789 F.3d at 1254, 1263 (explaining, for example, that a sentencing court

may place substantial weight on the defendant's criminal record, as five of the

§ 3553(a) factors are related to criminal history).  Furthermore, the district court

necessarily rejected, or at least discounted, Tucker's argument that his behavior

was explained by his mental health, substance abuse issues, and family upbringing

by finding that Tucker's behavior instead demonstrated that he thought he could

"get away with anything," "continue his criminal conduct," and "do whatever he

pleases in total disrespect for all laws[,] . . . for society[,] and for the protection of

anyone else." Sent. Hr'g at 34. The district court expressly found that "society need[ed] to be protected" from Tucker. Id. at 37.

Accordingly, Tucker has not shown that "the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of [this] case." See Irey, 612 F.3d at 1190 (quotation marks omitted).

## III. CONCLUSION

Tucker has failed to show any substantive unreasonableness in his sentencing and has failed to demonstrate plain error with respect to procedural unreasonableness. Accordingly, we affirm his 120-month prison sentence.

AFFIRMED.