[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14186

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EMANUEL GRAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cr-00487-SCJ-LTW-1

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Emanuel Gray appeals following his convictions for production and attempted production of child pornography, cyberstalking, and possession of child pornography, as well as his resulting 20-year total sentence.

On appeal, he argues that the district court erred in denying his pre-trial motion to suppress statements because he was in custody at the time he made the statements, and thus should have received *Miranda*[1] warnings, and the statements were involuntary. He also argues that insufficient evidence supported the jury's finding that he was the person who produced and possessed child pornography and sent threatening messages. Finally, he argues that his 20-year total sentence was substantively unreasonable because the district court failed to consider the nature of his offenses, his strides toward rehabilitation, sentencing disparities with similarly situated defendants, and his age and intellectual disability.

I.

In reviewing a district court's denial of a defendant's motion to suppress, we review its factual findings for clear error and its application of law to those facts *de novo*. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). When considering a ruling on

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

a motion to suppress, we construe all facts in the light most favorable to the party prevailing in the district court. *Id.* at 1235-36.

A defendant is "in custody" for *Miranda* purposes when "under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001). (alterations omitted). "The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." *Id.* A person is "in custody" for *Miranda* purposes only when there is a "formal arrest or restraint on freedom movement of the degree associated with a formal arrest." *United States v. Street*, 472 F.3d 1298, 1310 (11th Cir. 2006).

In assessing the totality of the circumstances, we consider whether the officers brandished weapons, touched the suspect, used language or a tone that indicated that compliance with the officers should be compelled, and the location and length of the detention. *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010). "[T]he fact that an individual is told he is not under arrest and is free to leave is a fact of substantial importance in determining whether a reasonable person would have felt free to leave." *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006).

Even if a defendant is not in custody for *Miranda* purposes, a confession is nevertheless inadmissible if it was not voluntarily given. *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010).

In determining whether a confession was voluntary, this Court examines the totality of the circumstances and considers "the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." *Hubbard v. Haley*, 317 F.3d 1245, 1252-53 (11th Cir. 2003). A "significant aspect" of the inquiry "involves the effect of deception in obtaining a confession." *Lall*, 607 F.3d at 1285. While a confession induced by threats or promises is not voluntary, "a mere admonition to tell the truth does not render a confession involuntary." *United States v. Vera*, 701 F.2d 1349, 1364 (11th Cir. 1983).

Here, we conclude that the district court did not err in denying Gray's motion. First, it properly found that he was not "in custody" at the time that he made his statements, and thus, was not entitled to *Miranda* warnings. Under the totality of the circumstances, a reasonable person in Gray's position would not have felt sufficient restraint such that he was not free to leave. *McDowell*, 250 F.3d at 1362. Of "substantial importance," the agents told Gray on multiple occasions that he was not under arrest and was free to leave. *Brown*, 441 F.3d at 1347. Although agents instructed him to stand in the hallway during the safety sweep and to stay in the living room during the subsequent search, the agents told him that he could go where he needed if he asked and reiterated that he was free to leave the apartment altogether. Moreover, Gray voluntarily followed the agents back into the apartment after the interview.

Further, the agents did not brandish their weapons during the encounter, did not touch Gray, and spoke in a calm tone without yelling. While the interview took place in an FBI vehicle, it was unmarked and parked in front of Gray's residence, and the agents did not lock the vehicle or otherwise impede Gray from leaving. Finally, the interview lasted about one hour and ten minutes, and there is no evidence that the agents extended the duration of the interview unnecessarily. Thus, there was no "restraint on freedom movement of the degree associated with a formal arrest," and Gray was not "in custody" for *Miranda* purposes. *Street*, 472 F.3d at 1310.

Second, the district court did not err in finding that Gray's statements were voluntary. Although Gray was young, had no prior experience with law enforcement, and had intellectual deficits, the interview was not excessively long, and the tone of the conversation was calm. Moreover, the agents did not use or threaten to use any force against Gray, or make any promises or inducements to get him to make his confession. Finally, Kabrhel's statements that he "was not owning up to what he did," and that saying that he did not remember was the same as lying appear to be mere admonitions to tell the truth, as Gray does not contend that Kabrhel made a threat or promise to him. *Vera*, 701 F.2d at 1364. Accordingly, we affirm the denial of Gray's motion to suppress.

II.

We review *de novo* a challenge to the sufficiency of the evidence supporting a conviction and the denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in support of the jury's verdict. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). The district court's denial of a motion for judgment of acquittal will be upheld if a reasonable trier of fact could determine that the evidence presented establishes the defendant's guilt beyond a reasonable doubt. *Id.*

It is unlawful for any person to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. 18 U.S.C. § 2251(a). Likewise, it is illegal to knowingly possess a visual depiction of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B). Finally, it is unlawful to use an electronic communication service, with intent to harass or intimidate, to engage in a course of conduct that "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress" to another person. 18 U.S.C. § 2261A(2)(B).

Here, viewed in the light most favorable to the government, the evidence supports Gray's convictions for production of child pornography, possession of the same, and cyberstalking. First, as to Gray's convictions for production of child pornography, Gray admitted in his interview with Perry that both phones were his, and the phone numbers matched the phone number from which

Cierra received messages. He gave the FBI agents the password to his phones and showed them how to access the sexually explicit content stored on them. He also admitted to receiving nude photos from Cierra. Moreover, Cierra testified that Gray asked her to send him sexually explicit photos, and that she only sent them when he asked for them. She recognized the sexually explicit images that agents recovered from Gray's phones and stated that she sent them to him. Accordingly, a rational trier of fact could have determined that sufficient evidence showed that Gray induced Cierra to engage in sexually explicit conduct and produce visual depictions of that conduct. *Gamory*, 635 F.3d 480, 497; 18 U.S.C. § 2251(a).

As to Sachi, she testified that she made sexually explicit content to send to an anonymous person. She also confirmed that she recognized the content that agents discovered on Gray's phones and stated that it matched the content that she sent. Thus, sufficient evidence also supported Gray's convictions for production of child pornography in relation to Sachi.

Second, as to Gray's possession conviction, the agents discovered sexually explicit images and videos depicting Cierra and Sachi on Gray's phones. Moreover, as mentioned above, Gray admitted to ownership of the phones, and the agents located them in a room that also contained his identification card. Accordingly, the jury reasonably found that Gray knowingly possessed visual depictions of minors engaged in sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B).

Finally, sufficient evidence supports Gray's cyberstalking convictions. Cierra described that Gray threatened to expose her nude images if she did not provide additional images and videos. He also told her that if she did not comply, he would get her kicked out of the band and expelled from school. Further, Gray created an Instagram account that featured a nude image that Cierra sent to him, which made Cierra scared and upset and caused her friends to make fun of her. The agents discovered the threatening messages Cierra received on Gray's phones. Given this evidence, a reasonable jury could have concluded that Gray's messages intentionally caused substantial emotional distress to Cierra. 18 U.S.C. § 2261A(2)(B).

Moreover, Sachi testified that she received messages threatening to expose her and ruin her life. The agents discovered the messages on Gray's phones, as well as additional messages threatening to expose her if she did not send more images or videos. Further, Sachi testified that, when Trumble came to her house, she was afraid that she was going to be in trouble and lose her place in the band. She also stated that she began seeing a therapist as a result of the threatening messages that she received. Thus, while her father and Trumble reassured her and told her that her spot in the band was safe, a reasonable jury could have found that Gray's threatening messages caused Sachi substantial emotional distress. Nevertheless, even assuming that Gray's conduct did not cause such distress, the jury could have determined that Gray's threats to publicize nude images of Sachi if she did not send more images

"would be reasonably expected to cause substantial emotional distress." 18 U.S.C. § 2261A(2)(B). Thus, we affirm in this respect.

## III.

We review the reasonableness of a district court's sentence for an abuse of discretion. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). The party challenging the sentence bears the burden of proving that it is unreasonable based on the facts of the case and the 18 U.S.C. § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

A district court must consider all § 3553(a) factors, but it is not required to explicitly discuss, or state, that it has considered each of the § 3553(a) factors. *United States v. Kulhman*, 711 F.3d 1321, 1326 (11th Cir. 2013). Moreover, the district court is not required to give all factors equal weight, and it may attach greater weight to one factor over others. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). The decision about how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court. *Id.*

A district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering the proper factors." *Id.* at 1189. We have stated that an indicator of a reasonable sentence is one that is imposed at the bottom of the advisory guideline range and is substantially below the statutory

maximum sentence.  *United States v. Carpenter*, 803 F.3d 1224, 1234 (11th Cir. 2015).

A claim of unwarranted sentencing disparities requires that the defendant be similarly situated to the defendants to whom he compares himself.  *United States v. Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015).  District courts should not draw comparisons to cases involving defendants who were convicted of less serious offenses, pleaded guilty, or who lacked extensive criminal histories.  *United States v. Jayyousi*, 657 F.3d 1085, 1118 (11th Cir. 2011).

Here, we conclude that Gray's 20-year total sentence is substantively reasonable.  The district court acknowledged that other cases may have involved worse photos, but it found that Gray's intentional extortion and punishment of the victims for refusing to give him more images necessitated a total sentence above the applicable mandatory minimums.  It also noted Gray's young age and immaturity but found that these were not a substantially mitigating factors, and they were outweighed by the seriousness of the offenses.  It explicitly stated that it considered each of the § 3553(a) factors, and it was within its discretion to weigh certain factors more heavily than others.  *Rosales-Bruno*, 789 F.3d at 1254.

Moreover, his 20-year total sentence was below the advisory guideline range of life and substantially below the statutory maximum total sentence he faced, further indicating the reasonableness of his total sentence.  Finally, although Gray points to cases in which defendants convicted of similar offenses were sentenced below the 15-year total sentence he requested, he was not similarly

situated to those defendants, because, as the district court noted, he faced a mandatory minimum of 15 years' imprisonment for two of his convictions.  Accordingly, we affirm.

**AFFIRMED.**