**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-11999

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

YULISEY HERRERA GONGORA,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20257-JEM-2

_____

Before ABUDU, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

Yulisey Herrera Gongora appeals her 180-month prison sentence after pleading guilty to possession with intent to distribute cocaine base ("crack cocaine"), conspiracy to witness

tamper, conspiracy to possess with intent to distribute crack cocaine, and possession of a firearm by a convicted felon.

On appeal, Herrera argues that the district court imposed a procedurally unreasonable sentence because the district court failed to properly explain its reasons for imposing an upward variance. Herrera also argues that her 180-month sentence is substantively unreasonable because the district court overlooked mitigating factors and created unwarranted disparities between Herrera and her codefendants.

After careful review, we conclude that the district court committed no reversible error and affirm Herrera's sentence.

## I. BACKGROUND

### A.    Charges and Plea

In 2022, Herrera and four codefendants were charged with various drug-trafficking-related offenses. In a superseding information, Herrera was charged with (1) possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(c) ("Count 1"); (2) conspiracy to obstruct justice, in violation of 18 U.S.C § 1512(k) ("Count 2"); (3) conspiracy to possess with intent to distribute crack cocaine, in violation of 18 U.S.C. § 846 ("Count 3"); and (4) possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g) ("Count 4").

In a plea agreement, Herrera agreed to plead guilty to the four counts in the superseding information and the government

agreed to dismiss the superseding indictment. As part of the plea agreement, the government agreed to recommend a "downward variance" from the base offense level of 28 to a level of 18 "to account for the disparity between powder and crack cocaine."

At the change-of-plea hearing, Herrera pled guilty to the four counts, and the district court accepted her guilty plea.

## B.    Factual Proffer

As part of the plea agreement, Herrera signed a factual proffer recounting these facts, which she stipulated the government could prove beyond a reasonable doubt.

From February to August 2022, Herrera conspired with others to possess with intent to distribute 262.27 grams of crack cocaine. Herrera cooked powder cocaine into crack cocaine and served as a non-exclusive supplier to several street-level dealers. Herrera and her coconspirators primarily sold crack cocaine from a house in Miami, Florida, referred to as the "Trap House." Other coconspirators routinely carried firearms as part of their drug trafficking, which Herrera knew.

On February 10, 2022, law enforcement searched the Trap House and found crack cocaine in Herrera's purse. On March 10, 2022, Herrera was present when law enforcement searched a coconspirator's car and seized two loaded firearms, crack cocaine, and other contraband.

After the car search, Herrera knew that law enforcement agents were investigating her and her coconspirators, and she

tried to interfere with the investigation. For example, while in prison, Herrera called a coconspirator's relative and instructed the relative on what to tell the police. Herrera also continued to arrange drug sales from prison.

On June 30, 2022, law enforcement was conducting surveillance of the home where Herrera lived with codefendant Bryan Mendez. Law enforcement observed Herrera sell cocaine. While arresting Herrera, law enforcement observed suspected cocaine in plain view inside the house. Later that day, law enforcement agents obtained a warrant and searched the house, where they found more cocaine, as well as two firearms in the dresser in the bedroom that Herrera and Mendez shared.

## C.    The Presentence Investigation Report ("PSI")

### 1.    Additional Offense Conduct Facts

A probation officer prepared a PSI, which included additional details about Herrera's drug trafficking. The PSI stated that Herrera employed juveniles to sell drugs and otherwise assist in her drug trafficking. Along with knowing that her coconspirators carried firearms, Herrera arranged sales of several firearms. The firearms found in Mendez's house had been used in two shootings near the Trap House in June 2022.

In sum, the PSI characterized Herrera as a "primary source of [crack cocaine] to a violent street gang" who "supervised and managed a distribution center . . . and employed street-level distributors and juveniles, who sold her drugs and provide[d] protection."

2.      Herrera's Criminal History

Herrera received three criminal history points for each of these convictions: (1) a 2010 state conviction for robbery with a firearm, (2) 2011 state convictions for burglary of an unoccupied dwelling and petit theft, and (3) a 2014 federal conviction for conspiracy to possess with intent to distribute marijuana. With nine criminal history points, Herrera's criminal history category was IV.

Although these were the only convictions that resulted in criminal history points, Herrera had several other run-ins with law enforcement. In 2019, she was fined for driving with a suspended license. Herrera also had several charges that were dismissed *nolle prosequi*, including carrying a concealed firearm, resisting an officer, possession of cocaine, petit theft, burglary, grand theft, criminal mischief, and unlawfully discharging a firearm. At the time of the PSI, she also had pending charges for prostitution and driving with a suspended license.

3.      Personal History and Characteristics

Herrera was born in Cuba and immigrated to the United States when she was around two years old. Herrera's parents separated around the same time, and she resided primarily with her mother. Her mother was diagnosed with schizophrenia and bipolar disorder and was incarcerated when Herrera was 12 years old.

Herrera was taken in by a cousin who physically abused her, and she ran away from home. Herrera lived "on the streets"

on and off for the rest of her teenage years but also resided with her stepfather at times.

Herrera was expelled from high school after 11th grade, but at the time of the PSI was close to completing a general education development ("GED") program. She was employed on and off throughout her adulthood, mostly in food service roles. She had two children.

The PSI also noted that Herrera suffered from anxiety, depression, and attention deficit disorder and had a history of substance abuse.

### 4.    Herrera's Advisory Guidelines Range

After grouping the four counts together, the PSI assigned Herrera a base offense level of 28, under U.S.S.G. § 2D1.1(a)(5), (c)(6), because she was accountable for 262.27 grams of crack cocaine. To the base offense level, the PSI added (1) a two-level increase for possession of a dangerous weapon, under U.S.S.G. § 2D1.1(b)(1); (2) a two-level increase for maintaining a premises to manufacture or distribute a controlled substance, under U.S.S.G. § 2D1.1(b)(12); (3) a two-level increase for involving an individual less than 18 years old, witness intimidation, and obstructing justice, under U.S.S.G. § 2D1.1(b)(16)(B), (D), and (E); and (4) a four-level role increase for being an organizer or leader.

Herrera also received a three-level reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1(a) and (b). This all resulted in a total offense level of 35.

With an offense level of 35 and a criminal history score of IV, Herrera's advisory guidelines range in the PSI was 235 to 293 months of imprisonment.

The PSI also noted that for Counts 1, 2, and 3, Herrera's statutory maximum sentence was 20 years of imprisonment, under 21 U.S.C. § 841(b)(1)(C) and 18 U.S.C. § 1512(c). For Count 4, her statutory maximum sentence was 10 years of imprisonment, under 18 U.S.C. § 924(a)(2).

### 5.    Herrera's Objections to the PSI

Herrera made several factual objections to the PSI. Herrera contended that she was merely a street-level dealer who supplied other street-level dealers and did not "employ" or control the other sellers.

Herrera also made two objections to the advisory guidelines calculation. First, Herrera asserted that her base offense level should be 18, rather than 28, to account for the disparity between crack and powder cocaine. The Fair Sentencing Act of 2010 greatly reduced the 100-to-1 sentencing disparity between crack and powder cocaine to 18-to-1. *See Dorsey v. United States*, 567 U.S. 260, 269-70 (2012).

At 18-to-1, Herrera's advisory guideline base offense level for 262.27 grams of crack cocaine was 18. The ratio has never been 1-to-1, which would yield a base offense level of 18 as Herrera requested. So Herrera was essentially requesting a substantial "downward variance" in the base offense level to 18.

Second, Herrera argued that she should receive only a two-level, not a four-level, role enhancement. She noted that the government agreed with the lower base offense level and the lower role enhancement. She did not object to any of the other guidelines calculations.

With Herrera's proposed lower base offense level of 18, she would still receive (1) a two-level increase for possession of a dangerous weapon; (2) a two-level increase for maintaining a premises to manufacture or distribute a controlled substance; (3) a two-level increase for involving an individual less than 18 years old, witness intimidation, and obstructing justice; and (4) a three-level reduction for acceptance of responsibility. This would yield a base offense level of 21. Under Herrera's proposed calculations, she would also receive a two-level, rather than four-level, role increase. In all, this would result in a total offense level of 23.

With a total offense level of 23 and a criminal history score of IV, Herrera's advisory guidelines range would be 70 to 87 months of imprisonment.

The government filed a response in which it (1) argued that Herrera's factual objections as to her offense conduct were meritless and (2) did not address her guidelines arguments.

The probation officer filed an addendum to the PSI in which it defended the facts and advisory guidelines range

calculation of 235 to 293 in the original PSI.[1]  The probation officer acknowledged the government's position that Herrera should receive a "downward variance" on the drug calculation so that her base offense level was reduced from 28 to 18. Nonetheless, the probation officer stood by the correct number of 28 in the PSI.  Yet the probation officer noted that the district court could consider the disparate treatment of crack and powder cocaine as a reason to vary downward from a correctly calculated range of 235 to 293 months, citing Supreme Court precedent.

The probation officer also acknowledged the government's position that Herrera should receive only a two-level role increase but again maintained that the four-level role increase in the PSI was correct, referencing specific facts about Herrera's offense conduct.

## D.    The Sentencing Hearing

At the May 2023 sentencing hearing, the district court asked what objections remained outstanding and stated that any other objections would be deemed waived.  Herrera restated her argument that her advisory guidelines range should be 70 to 87 months of imprisonment, based on (1) a base offense level of 18 to account for the disparity between crack and powder cocaine and

---

[1] The probation officer adopted additional information about Herrera's employment history but otherwise did not change the facts in the PSI based on Herrera's objections.

(2) a two-level, rather than four-level, role increase.[2]  She did not address any other objections.

The government responded that the advisory guidelines range in the PSI—235 to 293 months—was "absolutely correct under the current version of the United States Sentencing Guidelines and the current version of law."  Nonetheless, the government asked the district court to vary downward as to the base offense level for the drugs from 28 to 18 and adopt a lower advisory guidelines range of 70 to 87 months of imprisonment.

The district court quipped, "You didn't also agree to invitation to lunch at the White House and a letter of apology too, did you?"  Still, the district court accepted the lower advisory guidelines range of 70 to 87 months, stating that it "[s]eems to be the trend."

The district court then asked both sides for their sentencing recommendation.  The government recommended a sentence of 180 months of imprisonment for several reasons.

---

[2] During the sentencing hearing, defense counsel stated that the role enhancement issue had been "resolved" and the probation officer was "in agreement."  This is contrary to the addendum to the PSI, in which the probation officer maintained that a four-level increase was appropriate.

If Herrera had received a two-level, not four-level, role increase but kept the higher, crack-cocaine base offense level, her total offense level would be 33 and her advisory guidelines range would be 188 to 235 months of imprisonment.  *See* U.S.S.G. Ch. 5, Pt. A.

First, the government argued that the nature and circumstances of the offense justified a higher sentence because Herrera was "a high-level drug dealer, not an average street dealer," who was using children in her drug trafficking and "training a new generation of violent drug offenders."

Second, the government contended that a higher sentence was necessary for deterrence and promoting respect for the law. The government noted that Herrera was arrested several times and was not deterred from her criminal behavior. To the contrary, she continued arranging drug deals by phone while in prison.

Third and relatedly, the government argued that her criminal history was "woefully understated." The government noted that Herrera had a prior federal drug trafficking conviction and a prior crime of violence. The government contended that if not for a recent decision by this Court, she would be deemed a career offender.[3] Because of the change of law, the government

---

[3] In January 2023, a few months before Herrera's sentencing, this Court overturned its prior precedent and held that inchoate drug trafficking crimes, like conspiracy to distribute, are not controlled substance offenses for the purposes of the career offender enhancement. *See United States v. Dupree*, 57 F.4th 1269, 1279 (11th Cir. 2023) (en banc).

Later that year, the Sentencing Commission changed the guidelines so that inchoate crimes qualify. *See* U.S.S.G. App. C, amend. 822 (Nov. 2023); U.S.S.G. § 4B1.2(d).

So if Herrera were sentenced a few months earlier or later, she likely would have been deemed a career offender with an offense level of 32 and a

contended, she received "a considerable break . . . in [her] guidelines calculation." The government also asserted that six months before the offense conduct, Herrera conspired to smuggle drugs and other contraband into a federal prison.

Finally, the government argued that Herrera was more culpable than her codefendants and so a higher sentence was necessary to avoid unwarranted disparities.

Herrera asked for a sentence of 87 months, the high end of her recalculated advisory guidelines range that used a base offense level of 18. Herrera emphasized her remorse and cooperation with the government's investigation. Herrera also argued that, although her conduct was serious, she was not a "higher-level trafficker . . . living large off the profits of other people," but was just "trying to make ends meet for her and her children." She also discussed her unstable childhood and how those circumstances led her to a life of drugs and crime. Lastly, she noted her work history, pursuit of a GED, and potential to "break out of this cycle" once released from prison.

The government responded that, although Herrera provided some cooperation, she also withheld "significant amounts of material information," warned her coconspirators about the ongoing investigation, and continued to manage her drug operation from prison.

---

criminal history score of VI, resulting in an advisory guidelines range of 210 to 262 months. *See* U.S.S.G. § 4B1.1(a), (b); Ch. 5, Pt. A.

The government also brought up that Herrera's son was involved in her drug trafficking.  The government asserted that there was an incident where Herrera's son pointed a gun at another child.  Herrera said that her son had pointed only "a BB gun."  The district court stated, "Well, that's the least of my concerns."

In her allocution, Herrera stated that she was sorry for her actions and asked for mercy.  The district court then imposed its sentence, stating:

> The Court has considered the statements of all parties, the presentence report which contains the advisory guidelines, and the statutory factors as set forth in 18 U.S.C. § 3553(a).  A sentence will be imposed above the advisory guideline range, as this will be necessary to provide sufficient punishment and deterrence. . . .
>
> It is the judgment of the Court that the defendant, Yulisey Herrera Gongora, is committed to the Bureau of Prisons to be imprisoned for 180 months.  This term consists of 180 months as to each of Counts 1, 2 and 3 and 120 months as to Count 4 all to be served concurrently.

The district court did not give any further explanation for the imprisonment sentence imposed.  The court asked if Herrera had any objections, and defense counsel stated only, "We object to the procedural and substantive reasonableness of the sentence."

Counsel, however, did not specifically object that the court failed to adequately explain the sentence.

On the written Statement of Reasons form, the district court checked the boxes to indicate that it imposed an upward variance from the advisory guidelines range, and its reasons for the variance were "[t]o reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "[t]o avoid unwarranted sentencing disparities among defendants."  The district court did not provide any additional explanation on the written form.

### E.    Herrera's Codefendants

Three of Herrera's codefendants have been sentenced.  At Mendez's sentencing hearing, the government stated that, of all the defendants in this case, Mendez had "shown the greatest remorse and ha[d] shown the greatest efforts to want to rehabilitate himself."  The district court sentenced him to 102 months of imprisonment.

Codefendant Miguel Rodriguez was one of the gang's "street-level" distributors and was "involved in shootings and running over a quadriplegic in a wheelchair with his car."  The government argued that Rodriguez deserved a sentence between Herrera and Mendez because Herrera was the leader and organizer, and Mendez committed no violence.  The district court sentenced him to 120 months of imprisonment.

Codefendant Jose Rivera was held responsible for more than 550 grams of cocaine. He had a criminal history score of VI. He was sentenced to 144 months of imprisonment.

## II. DISCUSSION

In reviewing a sentence for reasonableness, we use a two-step process. *United States v. Trailer*, 827 F.3d 933, 935-36 (11th Cir. 2016). First, we ensure the district court committed no significant procedural error, which includes "failing to adequately explain the chosen sentence." *Id.* at 936. Second, we examine whether the sentence is substantively reasonable in light of the totality of the circumstances and the sentencing factors in 18 U.S.C. § 3553(a). *Id.* Herrera argues on appeal that her 180-month sentence was both procedurally and substantively unreasonable.

### A.    Procedural Reasonableness — § 3553(c)(2)

Herrera claims the district court's reasons for its upward variance were insufficient under 18 U.S.C. § 3553(c)(2) making her sentence procedurally unreasonable.[4]

The district court always must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C.

---

[4] The parties appear to agree, and thus we assume *arguendo*, that the pertinent advisory guideline range is the 70-to-87-month range that resulted from the parties' agreed-upon change to Herrera's base offense level and the lower role increase. But this range was reached based upon the government's agreeing to calculate the base offense level as 18 using a 1-to-1 crack to powder cocaine ratio.

§ 3553(c).  "If the district court imposes a sentence <u>outside the guidelines range</u>, then the district court must state orally during the sentencing hearing <u>'the specific reason for the imposition of a sentence different from' the guidelines range</u>."  *United States v. Steiger*, 99 F.4th 1316, 1321 (11th Cir. 2024) (en banc) (quoting 18 U.S.C. § 3553(c)(2)) (emphasis added).  The district court must also state those reasons "with specificity in a statement of reasons form."  18 U.S.C. § 3553(c)(2).

The purpose of requiring the district court to explain adequately its chosen sentence is "to allow for meaningful appellate review."  *Steiger*, 99 F.4th at 1321 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).  "A sentence is procedurally unreasonable if the district court fails to adequately explain the sentence, including any variance from the guidelines range."  *United States v. Oudomsine*, 57 F.4th 1262, 1265 (11th Cir. 2023) (discussing 18 U.S.C. § 3553(c)(2)).

To preserve a challenge to the procedural reasonableness of a sentence, a defendant must clearly state the grounds on which the objection is made in the district court, or she waives the objection.  *United States v. Carpenter*, 803 F.3d 1224, 1237 (11th Cir. 2015).  "A sweeping, general objection is insufficient to preserve specific sentencing issues for review."  *Id.* at 1238.

23-11999              Opinion of the Court              17

When a defendant fails to object to a § 3553(c)(2) error, this Court reviews the unpreserved claim only for plain error.[5]   *See Steiger*, 99 F.4th at 1322.

Our decision in *Steiger* as to § 3553(c)(2) is instructive.   In *Steiger*, the district court imposed an upward-variance sentence after stating the factors it had considered but without explicitly explaining why it imposed the sentence it did.   *Steiger*, 99 F4th at 1320-21.   The district court also failed to file a written statement of reasons.   *Id.* at 1325.   But the defendant did not object to his sentence on this § 3553(c)(2) ground in the district court.   *See id.* at 1319.

The en banc Court reviewed Steiger's unobjected-to § 3553(c)(2) challenge for plain error and held that he failed to establish the third element—that the district court's error affected his substantial rights.   *Id.* at 1322, 1325-27.   The Court explained that "a Section 3553(c) error does not affect a defendant's substantial rights if the record is clear enough to allow meaningful appellate review of the sentence."   *Id.* at 1325.   Accordingly, "a Section 3553(c) error warrants reversal under plain error review

---

[5] The plain-error standard requires the defendant to show: (1) an error occurred; (2) the error was plain; and (3) the error affected her substantial rights.   *See Steiger*, 99 F.4th at 1324.   If the defendant makes this showing, we have discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.   *See id.*   This Court does not reverse based on errors that are harmless or that do not affect the outcome of the proceeding.   *See* Fed. R. Crim. P. 52(a), (b); *Steiger*, 99 F.4th at 1322.

only when the district court's reasoning is unclear on the face of the record." *Id.* In Steiger's case, because "[a] reasonable person familiar with the sentencing record would understand" the reasons for the above-guidelines sentence, the defendant could not establish plain error. *Id.* at 1326-27.

Herrera argues that the district court procedurally erred because it violated 18 U.S.C. § 3553(c)(2) by failing to provide in open court, and in a separately filed statement of reasons, the specific justifications for her above-advisory-guidelines sentence. She raises no other procedural error as to her sentence.

Because Herrera made no specific objection to the district court's explanation of her sentence, her procedural reasonableness challenge based on § 3553(c)(2) is not preserved. *Carpenter*, 803 F.3d at 1238. Simply stating that she objected to "procedural reasonableness" after the sentence was pronounced was insufficient to preserve her current objection to the adequacy of the court's explanation for its chosen sentence. *See id.* Because Herrera's § 3553(c)(2) argument is unpreserved, we review it for plain error. *See Steiger*, 99 F.4th at 1322-24.

As in *Steiger*, Herrera correctly identified that the district court violated § 3553(c)(2). *See id.* at 1324-25. The stated reasoning offered by the court—that it had "considered the statements of all parties, the presentence report which contains the advisory guidelines, and the statutory factors as set forth in 18 U.S.C. Section 3553(a)" and that the punishment was "necessary to provide sufficient punishment and deterrence"—does not

satisfy the requirement under § 3553(c)(2) that the district court provide "the *specific* reason[s]" for imposing a sentence above the guidelines range.  18 U.S.C. § 3553(c)(2) (emphasis added).

Even so, Herrera cannot show that the court's error affected her substantial rights because the court's reasoning for its above-advisory-guidelines sentence is clear on the face of the record.  *See Steiger*, 99 F.4th at 1325.  The government provided several reasons why an above-advisory-guidelines sentence was appropriate under the § 3553(a) factors,[6] including that (1) Herrera was a leader of a group of violent drug dealers, (2) Herrera involved juveniles in her offense, (3) Herrera was undeterred by her previous arrests, (4) she continued to arrange drug deals from prison, (5) her guidelines range understated the seriousness of her criminal history, (6) she was more culpable than her codefendants, and (7) although she did show remorse and cooperate somewhat, she also negatively interfered with the investigation by omitting material information and warning coconspirators.

---

[6] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed education or vocational training or medical care; (6) the kinds of sentences available; (7) the sentencing guidelines range; (8) pertinent policy statements of the sentencing commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

It is clear from the face of the record that the district court varied upward from the advisory guidelines range for these reasons, even though it did not explicitly say so at sentencing or in a written statement of reasons. Herrera thus cannot establish plain error, and "[a] remand in this circumstance would be a wasteful formality for the district court to state on the record what everyone already knows." *See id.* at 1327.

## B.    Substantive Reasonableness

Herrera also challenges the substantive reasonableness of her 180-month sentence. We review the substantive reasonableness of a sentence for an abuse of discretion in light of the § 3553(a) factors and the totality of the circumstances. *Oudomsine*, 57 F.4th at 1266. The party challenging the sentence, here Herrera, bears the burden of establishing that it is unreasonable. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

"A district court abuses its discretion" and imposes a substantively unreasonable sentence "when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citing *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)).

"To arrive at an appropriate sentence, the district court must consider all of the applicable § 3553(a) factors. *Rosales-Bruno*,

789 F.3d at 1254 (citing *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009)). "That does not mean, however, that it must give all of the § 3553(a) factors equal weight." *Id.* The district court may attach great weight to one § 3553(a) factor over others, and the weight it assigns to any particular factor is within its sound discretion. *Id.*

The district court has wide discretion to impose an upward variance based on the § 3553(a) factors. *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022). If the district court determines that an upward variance is warranted, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. While we may consider the extent of the variance, we do not require extraordinary circumstances to justify a sentence outside the advisory guidelines range or presume that such a sentence is unreasonable. *Id.* at 47; *Irey*, 612 F.3d at 1186-87.

Ultimately, we will vacate a defendant's sentence as substantively unreasonable only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotation marks omitted).

Here, Herrera argues that her sentence was substantively unreasonable because the district court failed to give adequate weight to mitigating factors and created unwarranted sentencing

disparities between her and her codefendants. Herrera emphasizes that her codefendant Rivera was responsible for a higher drug quantity and had a more violent criminal history but received a lower sentence.

After thorough review, we concluded that Herrera has not shown that the district court abused its discretion by sentencing Herrera to 180 months of imprisonment. *See id.* at 1189. Herrera's offense conduct was very serious because she was a leader of a group of violent drug dealers and involved juveniles in her offense. The need to provide deterrence also weighed in favor of a high sentence because Herrera was undeterred by her previous arrests and even continued to arrange drug deals from prison.

Herrera contends that the district court gave insufficient weight to mitigating circumstances, namely her unstable upbringing, and created unwarranted disparities between her and her codefendants, who all received lower sentences despite some of them having more violent offense conduct and criminal histories.

While Herrera received a higher sentence than her codefendants, that reflects that she was a leader or organizer and therefore more culpable. The district court did not abuse its discretion by deciding to give more weight to this factor than her codefendants' criminal histories. *See Rosales-Bruno*, 789 F.3d at 1254.

Additionally, Herrera's 180-month sentence was well below the 20-year statutory maximum for her offenses, which is another indication that it is reasonable.[7]  *See United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020).  Under the circumstances, we cannot say the district court's decision to impose a 180-month sentence was an abuse of discretion.  *See Irey*, 612 F.3d at 1190.

### III.  CONCLUSION

For the above reasons, we affirm Herrera's 180-month prison sentence.

**AFFIRMED.**

---

[7] It is also worth noting that Herrera's sentence was below the advisory guidelines range that she would have received if she had not received the large powder-cocaine variance that was agreed to by the government but not provided for in the advisory guidelines.  *See supra* note 2.